FRANCIS BLAIS vs. MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

July 23, 1885.

**Railway Company — Cattle-Guards — Removal of Snow.—** Reasonable care and diligence do not require a railway company, unless under exceptional and extraordinary circumstances, to remove the natural accumulations of snow and ice from cattle-guards.

Appeal by defendant from a judgment of the district court for Rice county, where the action was tried before *Buckham,* J., and a jury, a verdict rendered for plaintiff, and a motion for a new trial denied.

*J. D. Springer* and *Geo. N. Baxter,* for appellant.

*Geo. W. Batchelder,* for respondent.

MITCHELL, J. The plaintiff and his son were hauling timber to a place about half a mile distant from defendant's road. After dark, and about 6 o'clock in the evening of January 29, 1883, plaintiff, having discharged his load, left his team unhitched and unguarded at the side of the highway, and went to help his son unload at a point some rods distant, and out of sight of his own team. While he was absent, his team started and ran down the highway, and on coming to the railway crossing turned off the highway, crossed over the cattle-guard, and followed down defendant's railway track, came in collision with a passing train, and sustained the injuries complained of. What enabled the team to cross over the cattle-guard was the fact that it was filled with snow and ice up to the level of the track. To leave a team of horses untied in such a place at so late an hour and in winter, when they are especially liable to become restive, would seem to us exceedingly careless conduct. But we shall assume that this was a question for the jury.

The remaining question is whether it was negligence on the part of the railroad company to allow the cattle-guard to become and remain filled with ice and snow. So far as appears, this was an ordinary highway crossing, and the highway was used the same as, and not differently from, any ordinary country road in the winter season. It also appears that this was an unusually severe winter, the railroads having been much obstructed by frequent and severe snowstorms, particularly during the months of January and February, and that it took all their available force to open and keep open their tracks for traffic. It does not appear how long this trench had been thus filled up, but, presumably, from the commencement of winter; for the evidence shows that it is the custom of railroads in this state not to attempt to remove the accumulations of snow from the cattle-guards in the winter, but to allow them to remain until they thaw in the spring. It also appears from the evidence that it would be impracticable to keep these trenches clear of snow, except at the outlay of a very large expense; that every time they filled up it would be necessary, in order to remove the snow and ice, to take up the rails and remove some of the ties,—a job that would occupy a gang of four or five men several hours. To any one acquainted with our climate in the winter, it must be apparent that this process would necessarily have to be repeated very frequently, sometimes almost constantly, for these pits would be liable to be filled up, not only by each fresh fall of snow, but also by the drifting of snow previously fallen, as well as by the action of passing engines and snow-plows. Including farm as well as highway crossings, these cattle-guards are very numerous. On this portion of defendant's road between the stations of Kilkenny and Mulford—a distance of four miles—there are eleven. The mere statement of these facts will suggest to the mind of any one the magnitude and difficulty of the task of keeping all these pits or trenches clear of snow and ice during our winters. Are railroad companies required to do this under ordinary circumstances?

It is not decisive of this question to answer that they are bound to maintain cattle-guards in winter as well as summer. It must be remembered that railroad companies are not to be held to the liability of insurers of their fences and cattle-guards. They are only bound to

exercise ordinary care and prudence to keep them in suitable repair. Does *ordinary and reasonable care* require them to keep or to attempt to keep these pits clear of snow and ice, is the real question.   Of course, if a legal duty is clearly imposed upon them by statute, mere difficulty or expense in performing it would not relieve them from complying with the law.   But, in determining what constitutes ordinary or reasonable care and diligence in the performance of a duty, we must consider all the surrounding circumstances in the light of practical common sense.   The statute requiring railroads to construct and maintain fences and cattle-guards is a police regulation, the object of which is to prevent animals from getting upon the track and thus endangering their own safety, as well as that of persons travelling upon the road.   At seasons other than winter, domestic animals are almost invariably allowed to run at large or in the fields, and they are at such times, almost by natural instinct, attracted to wander or pasture upon the right of way.   But in our severe winters cattle must almost necessarily be kept up in stables or farm-yards, and even in the exceptional cases where they get out, there is nothing to attract them upon the right of way.   Hence the mischief to be apprehended from the cattle-guards becoming filled with snow and ice is very inconsiderable.

On the other hand, the burden of the constant removal of this snow and ice is so difficult and expensive as to be almost impracticable. It would involve the employment of a large extra force of men along the entire line of road.   The work at times would be incessant, for if every pit or trench were cleared at night, they would be liable to be filled again by morning.   This burden would be so great as to be disproportionate to any benefits to be derived from its performance, and not subservient to any public necessity.   This is in itself, we think, an important consideration in determining whether ordinary care and reasonable diligence require its performance.   Men of ordinary prudence would not ordinarily feel called upon to do a thing the expense and difficulty of doing which were so great, and out of all proportion to the benefits to be derived from its performance, and where the chance of mischief from not doing it is so remote and inconsiderable. A cattle-guard is but a part of the fence, and if ordinary diligence requires a railroad company to remove the ice and snow from a cat-

tle-guard, it would also require them to remove snow-banks which might enable animals to pass over the top of a fence,—a thing which we apprehend never occurred to any one as being obligatory; yet we see no difference between the two cases.

A city is required to exercise reasonable care to keep its streets and sidewalks in a safe condition. This duty, of course, devolves upon them in winter as well as summer. Yet, in determining what constitutes such reasonable care, it has been held that it is not liable for an injury caused by a fall occasioned by a ridge of ice formed on the sidewalk by the tramping of snow, and freezing and melting until the surface becomes uneven. This was held upon the express ground that it would be a great hardship, and involve ruinous expense, if all the multitudinous ways subject to be affected by winter storms are to be constantly watched, and kept in thoroughly good condition. *Mc-Kellar* v. *City of Detroit*, 23 N. W. Rep. 621. As bearing upon the question of what reasonable diligence requires, we think the principle of the case cited is somewhat analogous to the one at bar. We are aware that in *Dunnigan* v. *Chicago, etc., Ry. Co.*, 18 Wis. 33, (the only case we have found in which this exact question has been passed upon,) it was held that to permit these cattle-pits to become choked with snow, so as to enable stock to pass over them, is a failure of statutory duty. But the question does not seem to have been very fully argued, there being other and more prominent questions in the case, and the court, in their opinion, dispose of the matter very summarily, and without much consideration. Our conclusion, after considerable reflection, is that the burden of making these removals of snow is so disproportionate to any benefits to be derived from it, and the mischief liable to result from not doing it is so remote and inconsiderable, as not to constitute the basis of so expensive and extensive a charge upon railroad companies, and that under *ordinary circumstances* reasonable diligence does not require them to do it. We say under *ordinary circumstances*, for the land or highway adjacent to a cattle-guard may, in exceptional or extraordinary cases, be so used, even in the winter, that ordinary care and prudence would require the removal of this ice and snow, so as to prevent the passage of animals on the railroad track. In this case no such extraordinary or

exceptional circumstances existed; hence, in our opinion, no negligence on part of defendant in this case was proved.

Order reversed, and new trial ordered.