EDGAR STACEY *vs.* WINONA & ST. PETER RAILROAD COMPANY.

December 9, 1889.

**Railway—Cattle-Guard—Removal of Snow.**—Applying the rule in regard to the removal of snow and ice from cattle-guards, laid down in *Blais* v. *Minn. & St. Louis Ry. Co.*, 34 Minn. 57, to the undisputed facts in this case, it is *held* that the trial court erred in refusing to charge the jury, as requested, that the defendant was not negligent in this respect as to a guard over which plaintiff's cattle passed on to its railway track.

**Same—Cattle Unlawfully at Large—Duty of Trainmen.**—The cattle were running at large in violation of the law. *Held*, that as the cattle-guard was not in an unlawful or forbidden condition, under the circumstances, and as the cattle were at large contrary to law, trespassers upon defendant's right of way, the defendant's servants, engaged in operating its trains, were not bound to anticipate such trespassing by looking ahead, or by managing a train with reference to such a contingency.

Appeal by defendant from an order of the district court for Goodhue county, *McCluer*, J., presiding, refusing a new trial after verdict of $60 for plaintiff. The action was to recover for one cow killed and two injured by defendant's train on its railway track, and was brought in justice's court, and an appeal therefrom taken by defendant on questions of law and fact.

*Wilson & Bowers*, for appellant.

*J. C. English* and *J. C. McClure*, for respondent.

COLLINS, J.    In *Blais* v. *Minn. & St. Louis Ry. Co.*, 34 Minn. 57, (24 N. W. Rep. 558,) this court announced that, save under exceptional and extraordinary circumstances, reasonable care and diligence did not require a railway company to remove the natural accumulations of snow and ice from its cattle-guards; and such rule must be accepted as the settled law of the state upon the subject. That case was carefully considered, as is manifest from the opinion, in which the reasons for the conclusion are clearly and forcibly stated, and we remain satisfied that it was decided correctly. No special circumstances were shown to exist in the case at bar which should except it from an application of the established law. It was undis-

puted that the winter had been the most severe for eight years. Snow had fallen to a great depth, in many places entirely covering the fences along defendant's right of way. Cattle could make their way almost anywhere, the fences proving of little or no use. Defendant's railway had been blockaded several times during the season, and only a few days prior to the accident had been closed for nearly one week on account of the snow. A large number of men, with engines and snow-plough, were engaged constantly in removing the drifting snow from the rails; and so much had been thrown out that it was piled up on either side of the track until there was barely room for the trains to pass by. There were at least ten cattle-guards upon the repair section in question, six and three-fourths of a mile in length. It is true that plaintiff's farm bordered on the corporate limits of a village; but we are not informed of its size, and there is nothing in the case tending to indicate that the road from which the animals went upon defendant's track was anything more than an ordinary country highway. With these circumstances before it, the trial court erred in directing the jury to pass upon the question of defendant's negligence in regard to keeping the guard free and clear of snow and ice, and whether or not it had used reasonable precautions in the matter. Under the rule established by the *Blais Case*, defendant was not negligent in this respect. The court should have so charged the jury, as requested by the defendant; for it is apparent that the conditions were such at the time of the accident, and for some weeks previous, as to relieve it from attempting to keep the cattle-guard free and clear of snow and ice. A duty of this magnitude no more devolved upon the defendant than that, equally as important, of removing the snow from such portions of the fence along its right of way as happened to be covered up, and thus rendered of no value.

As a new trial must follow, it is proper that we should consider some other features of the case. Plaintiff's cattle were usually kept in his barn-yard, a few rods north of the railway crossing. On the day in question they had been permitted to go from the yard into an old and unfenced corn-field, from which they wandered to the highway, and thence—at the crossing—upon defendant's track, along which they proceeded, until overtaken by its locomotive. The com-

mon law in reference to the restraint of domestic animals prevailing in this state, in the absence of proof that the electors of a municipality have adopted a by-law to the contrary, made it plaintiff's duty to keep his stock upon his own premises, and not permit it to run at large. This duty he disregarded at a time, perhaps, when he should have been very vigilant, in view of the weather and condition of the railway in his immediate vicinity. The cattle were allowed to wander from an inclosure. They were unlawfully on the public road, and thereafter became trespassers upon defendant's railway. Bearing in mind that at this time the defendant was not in default in its duty as to cattle-guards at its crossings, the case must be considered precisely as if the statute had never existed, or precisely as if defendant was not required to fence its right of way, and the cattle had strayed thereon from adjacent lands, and been injured. It must be determined upon common-law principles, and, as to trespassing cattle, the defendant would only be liable for actual negligence on the part of the engineer; for his neglect to exercise reasonable and proper care; for his failure to use due diligence to avoid injury to the cattle after discovering them upon the track. The defendant's servants could rightfully act upon the presumption that plaintiff's stock was upon his premises, and were not bound to anticipate trespassers by looking ahead, or by managing its trains with reference to such a contingency. *Locke* v. *First Div. etc., R. Co.,* 15 Minn. 283, (350;) *Witherell* v. *Mil. & St. Paul Ry. Co.,* 24 Minn. 410; *Hooper* v. *Chicago, St. Paul, M. & O. Ry. Co.,* 37 Minn. 52, (33 N. W. Rep. 314;) *Palmer* v. *Northern Pacific R. Co.,* 37 Minn. 223, (33 N. W. Rep. 707.) But it has been said that the road should have been operated with reference to the fact that the guard was of no value as an obstruction to the passage of animals from the road to the right of way. This claim is answered by saying that plaintiff's cattle were upon the railway track in violation of the law, while the guard was not in a forbidden or unlawful condition. It was in a condition which is recognized as unavoidable in severe winters, and for which railway companies are not responsible, unless there be exceptional and extraordinary circumstances. The court therefore erred in refusing defendant's fourth request, which was, in effect, that defendant's

servants were under no obligation to look ahead for trespassing cattle.

We are unable to discover from the testimony that any duty rested upon the defendant to remove from such part of plaintiff's path or approach to the crossing as was within the limits of the public road the snow thrown there by men and ploughs engaged in clearing out the railway, and for that reason defendant's ninth request should have been given to the jury. The plaintiff's right to recover, upon the testimony now before us, turned, therefore, upon the question of the failure and neglect of defendant's engineer to exercise due care and diligence to avoid injury to the cattle after he discovered them upor the track.

Order reversed.