C. F. LAWSON v. W. H. TRUESDALE, Receiver.[1]

March 28, 1895.

No. 9227.

**Railway Employe—Danger from Snow and Ice.**

In this latitude, where more or less snow falls and ice accumulates therefrom in the winter season, whereby it becomes necessary to remove it from railway tracks many times in order that a railway may be operated, and also made safer for employés, the dangers to the latter increase, and the risks assumed become more hazardous.

[1] Reported in 62 N. W. 546.

Same—Assumed Risk.

When entering into the railway service in such a latitude, an employé assumes such risks as are usually and customarily incident to the falling of snow, the forming of ice, and the removal of the same from tracks and places where employés are required to work, when the removal or disposition thereof is done in a proper and reasonable manner, in the exercise of due and ordinary care for the safety of employés.

Negligence in Removing Snow.

Whether from the evidence it appeared that the snow and ice were removed from defendant's yard, in which plaintiff worked as a switchman when injured, in a proper and reasonable manner, in the exercise of due and ordinary care for the safety of employés, was a question of fact for the jury to determine.

Contributory Negligence.

Held, that whether the plaintiff was guilty of contributory negligence when attempting to board a car in motion, in the usual and proper manner for discharging his duties, as he claimed, was also a question for the jury.

Action in the district court for Hennepin county by C. F. Lawson against W. H. Truesdale, receiver of Minneapolis & St. Louis Railway Company, to recover damages for personal injuries. The jury rendered a verdict in favor of plaintiff for $7,150. The court, Smith, J., made an order granting defendant's motion for a new trial unless plaintiff should consent to a judgment for $5,000, to which plaintiff consented. From this order defendant appealed. Affirmed.

*Albert E. Clarke* and *Wilbur F. Booth*, for appellant.

The risks resulting from snow and ice are risks of employment. Henkes v. City of Minneapolis, 42 Minn. 530, 44 N. W. 1026; Wright v. City of St. Cloud, 54 Minn. 94, 55 N. W. 819; Blais v. Minneapolis & St. L. Ry. Co., 34 Minn. 57, 24 N. W. 558; Stacey v. Winona & St. P. R. Co., 42 Minn. 158, 43 N. W. 905; Piquegno v. Chicago & G. T. Ry. Co., 52 Mich. 40, 17 N. W. 232; Dowell v. Burlington, C. R. & N. R. Co., 62 Iowa, 629, 17 N. W. 901; Brown v. Chicago, R. I. & P. Ry. Co., 64 Iowa, 652, 21 N. W. 193. The existence of the ice was not the proximate cause of the injury. Chicago, St. P., M. & O. Ry. Co. v. Elliott, 5 C. C. A. 347, 55 Fed. 949. Proof that work is done in the customary way is of itself proof that it was not negligent. Flanders v. Chicago, St. P., M. & O. Ry. Co., 51 Minn. 193, 53 N. W. 544. . Plaintiff was guilty of contributory negligence in attempting

to get on the car.   Roul v. East Tennessee, V. & G. Ry. Co., 85 Ga. 197, 11 S. E. 558;  Novock v. Michigan Cent. R. Co., 63 Mich. 121, 29 N. W. 525;  Cunningham v. Chicago, M. & St. P. R. Co., 5 McCrary, 465, 17 Fed. 882, and 12 Am. & E. R. Cas. 217;  Dowell v. Vicksburg Ry. Co., 61 Miss. 519.   Where there is a safe and a dangerous way to perform a service, failure by an employé to adopt the safe one, even if other servants do likewise, is negligence.   Pierce, R. R. 377, 378;  Chicago & N. W. R. Co. v. Bliss, 6 Brad. 411;  Chicago & A. R. Co. v. Rush, 84 Ill. 571.   The fact that it was the custom to do so makes no difference.   Andrews v. Birmingham Mineral R. Co., 99 Ala. 438, 12 South. 433;  Kroy v. Chicago, R. I. & P. R. Co., 32 Iowa, 357;  Thompson v. Boston & M. R. Co., 153 Mass. 391, 26 N. E. 1070; Larson v. Ring, 43 Minn. 88, 44 N. W. 1078.   To recover, the servant must show that he did not know of the defect, and had not equal means of knowing with the master.   Texas & P. Ry. Co. v. Rogers, 13 U. S. App. 547, 6 C. C. A. 403, 57 Fed. 378;  3 Wood, Ry. Law, § 386.   A servant assumes obvious risks.   3 Wood, Ry. Law, p. 1747, § 379;  Ragon v. Toledo, A. A. & N. M. Ry. Co., 97 Mich. 265, 56 N. W. 612;  Batterson v. Chicago & G. T. Ry. Co., 49 Mich. 184, 13 N. W. 508.   That defendant did not know the ice was there is no excuse, as means of knowledge is evidence of knowledge.   McKee v. Chicago, R. I. & P. Ry. Co., 83 Iowa, 616, 50 N. W. 209.

*Larrabee & Gammons*, for respondent.

COLLINS, J.   This is a personal injury case, in which plaintiff had a verdict.   The appeal is from an order denying defendant's motion for a new trial, and the only exception taken during the proceedings, so far as appears from the record, was that of defendant to the refusal of the court below to instruct the jury to return a verdict in its favor.

There was little controversy over the facts.   Plaintiff was an experienced switchman in defendant's employ, and had worked for more than two months in what was known as the "middle yard" at Minneapolis.   The "lead" track in this yard ran northerly and southerly, and on its westerly side were several side tracks, branching off and runnning in a northerly direction from the lead.   There was a slight ascent on all of these side tracks, so that a car placed upon

either had to have its wheels blocked or its brakes set, to prevent its return down grade towards the lead. The switch stands for these side tracks stood 67 feet apart on the opposite or easterly side of the lead track, were numbered, going northerly, from one upward, and surmounting the top of each switch rod was the usual iron target, distant about two feet from a passing freight car. It was plaintiff's duty to "catch" the cars as they were pushed or "kicked" by a locomotive onto these side tracks, to stop them at the proper points, either to block the wheels or set the brakes, and if necessary, to couple them on to other cars. He was the only man in the yard who did this particular work, and was usually busily employed. All of the switching to the side tracks in the yard was necessarily from a southerly direction, and from the evidence it appeared that it was customary and proper for all men engaged in this kind of work to catch the car while in motion, and ride to the place where it was to be left, and that in this particular yard it was customary and proper for plaintiff and others to take station on the easterly side of the lead track, where they could see the switch target, the switch being turned by another man, indicating the track to be used, and, of necessity, southerly from it, and there catch the coming car by first stepping on a truck oil box, and thence to the lower round of the side ladder of the car, sometimes riding in this position, and at other times taking place at the brakes on top of the car, thus riding to the point of destination, where, as before stated, they were required either to block the wheels or to set the brakes. When the car going upon the side track was the first to go there,— and that was the case with the car which plaintiff tried to catch when injured,—the imperative rule in this yard was to set the brakes.

On the afternoon in question, in the winter season, plaintiff walked across the side tracks, from the point where he had been with other cars, to the easterly side of the lead, there to catch a car which was to be kicked onto side track numbered 14. He took position opposite track numbered 11, about 200 feet southerly of track 14. The car came along quite rapidly, the speed being estimated at 8 miles or more per hour. The plaintiff seized a round of the ladder with his hands, and was about to spring upon the oil box of the car truck, when he slipped or stumbled, as he claimed, on a pile of ice

and snow in dangerous proximity to the track, and lost his footing. Holding on with his hands, he was thrown against the side of the car, and almost instantly struck a switch target, which knocked him to the ground, inflicting the injuries complained of.

The negligence of the defendant relied on was that it allowed this pile of snow and ice to remain in close and dangerous proximity to the lead track; along which it was necessary for the plaintiff to walk rapidly, or to run, in order to board the cars as they came up to him from the locomotive. There was evidence which would have justified the jury in finding that snow, or ice, or both, had been removed from the tracks, and from about the switch stands, and thrown into a pile within what may be called the "switch line," not over two feet from a passing car, and there allowed to remain for a few days prior to the accident; that the pile, paralleling the track, was from 15 to 18 inches high, about 2 feet wide, and from 7 to 10 feet long, and that, the night before plaintiff was injured, it had been thinly covered with fresh snow, which had fallen or been blown upon it; that the plaintiff had not noticed it, and as he hastily stepped or ran along the side of the car, that he might spring up and board it in the usual and customary way, he slipped or stumbled on the pile, the slipping or stumbling being the proximate cause of his injuries.

It is claimed by counsel for appellant that the language used in Henkes v. City of Minneapolis, 42 Minn. 530, 44 N. W. 1026, and Wright v. City of St. Cloud, 54 Minn. 94, 55 N. W. 819, is broad enough to cover and include the conditions found here, and to relieve their client from liability; and also that the principle for which they contend is clearly recognized in Blais v. Minneapolis & St. L. Ry. Co., 34 Minn. 57, 24 N. W. 558, and Stacey v. Winona & St. P. R. Co., 42 Minn. 158, 43 N. W. 905; and that, as the risks resulting from snow and ice are part of the risks of employment in this latitude, something more than their existence in dangerous proximity to the track must be proved to establish a case of negligence. There was not a word said in either of the cases cited by counsel which can be construed into an intimation that, as a matter of law, a railway employé, when entering service in this climate, assumes all risks which attend the falling of snow or the forming of ice upon or about the tracks and yards, or the removal

of the same by railway companies.   Nor have we seen any case in any court laying down that doctrine.

The learned tr..al court charged the jury, without any exception by defendant's counsel, that the first question to be determined by them was whether defendant was negligent in leaving the snow in the condition shown by the testimony we have referred to.   Later on, when passing upon defendant's motion for a new trial, it stated that in this latitude, where more or less snow falls and ice accumulates therefrom, in the winter season, and where it becomes necessary to remove it many times in order that a railroad may be operated, and also made safer for employés, the dangers to the latter increase, and the risks assumed become more hazardous.   It then held the law to be that, when entering into the railway service, an employé assumes such risks as are usually and customarily incident to the falling of snow, and the removal thereof from railway tracks and places where employés are required to work, when the removal or disposition thereof is done in a proper and reasonable manner, in the exercise of due and ordinary care, for the safety of employés; and, further, that, when removing the snow, defendant was not required to remove it so as to make it absolutely safe for employés to perform their duties; it was only required to see that the yard was maintained in a reasonably safe condition, considering all facts and circumstances connected with its use.   We have no doubt but that this is a correct statement of the law applicable to the case at bar, and that whether defendant removed the snow and ice in a proper and reasonable manner, in the exercise of due and ordinary care for the safety of employés, was, as charged by the court below without objection, a question for the jury.   Certainly, a risk made hazardous by the act of the defendant itself cannot be declared to be one which the plaintiff assumed when he entered into its employ as incident thereto.

It is argued by counsel that the evidence conclusively shows that the snow and ice were shoveled out and removed from the tracks and switch stands in the usual and customary manner, and hence there can be no recovery.   The rule in this state on this point is that the law will not excuse a negligent act because customary, but proof of custom is evidence, although not conclusive, as to whether the act is negligent.   Flanders v. Chicago, St. P., M. & O. Ry. Co., 51

Minn. 193, 53 N. W. 544, and cases.     But, in any event, the evi-
dence as to the usual custom all went to prove that it was customary
to throw the snow two feet, at least, beyond the switch line; while,
as we have already said, there was evidence in this case which
would have justified a finding that the pile of which plaintiff com-
plains was much nearer and within the switch line.

We now come to the claim put forward by counsel that plaintiff
was guilty of contributory negligence, in that he recklessly attempt-
ed to board a car running at a high rate of speed.     The testimony as
to the rate of speed of the car was conflicting, and also as to wheth-
er it was customary for switchmen to board the cars as they were
being put onto the side tracks; but the law is fully settled in this
state that where the evidence is conflicting, or is such that fair-mind-
ed men of ordinary intelligence may differ as to the inference to be
drawn therefrom, it is proper to submit the question to the jury.
And this question was submitted, the defendant offering no objec-
tion and taking no exception.     There was evidence, as we have al-
ready said, which warranted a finding that the car was not running
so rapidly as to make the plaintiff's attempt unusual or reckless,
the evidence being that its speed was eight miles an hour, about
twice as fast as a man can walk, and also which warranted a find-
ing that it was usual and customary for switchmen to board run-
ning cars for the purpose of performing the duty required of plain-
tiff.     In fact, one of the witnesses—an experienced man—testified
that this was not only the usual and customary manner among yard
switchmen, but that it was required of them; and, if the work was
not or could not be done in this way, the aid of a horse would be
necessary, in order that the men might catch the cars, stop them at
the proper places, set the brakes, or even to block the wheels in
time.     It is a matter of common knowledge that, when cars are put
in motion, they do not stop of their own accord at a desired point;
and we think it equally as much a matter of common knowledge that
it is not the practice of switchmen to chase them on foot when they
are being set in on side tracks, or to stop them without using the
brakes.     But it is urged by counsel that the plaintiff's work could
have been done in perfect safety had he mounted the car before it
was taken by the locomotive, and then ridden through the yard to its
destination.     This may be true, but none of the witnesses intimated

that this was the customary way, or even that it was ever done, probably because impracticable. It is also to be noticed that it was undisputed that the car from which plaintiff fell was the first to go in on side track No. 14; and it was also undisputed that the first car must always be fixed and held in position by the brakes, not by blocks under the wheels; and to halt the car at the right point, which was part of his duty, or to apply the brakes, plaintiff had to go on top of the car before it came to a standstill. Considerable time was taken up by defendant's counsel in an effort to show by witnesses that it was customary in this yard to block the wheels of the cars when on side tracks, and not customary to set the brakes; and this point is argued in the brief. What the custom was in this respect has no particular bearing on the question of plaintiff's negligence. If he could be held negligent at all, it would not have arisen out of the method adopted for holding the cars in place on the side track, but because he attempted to board the car when it was in motion; and this act was in no way connected with what his duty was when the car had been stopped.

It is claimed that the verdict, as reduced by the trial court, still remains excessive. As rendered by the jury, it was outrageously large, and we feel justified in saying that no fault could have been found with the trial court if the verdict had been scaled down one-half or more. It was cut about one-third, and, although it is now somewhat more than it should be, we decline to interfere with the careful and conscientious action of the learned judge, who reduced it when passing on the motion for a new trial.

Order affirmed.