GEORGE PAUL v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

Railroads: INJURY TO STOCK: DEFECTIVE CATTLE GUARDS: PROXI-
1    MATE CAUSE.  On an issue as to whether plaintiff's colts were killed inside defendant's right of way, where they had gone owing to defective cattle guards, or on the crossing protected by the cattle guards, the evidence is considered and held sufficient to warrant the jury in finding that one of the colts was killed on or within the guards, notwithstanding the statement of the engineer that it was killed on the crossing.

Defective Cattle Guards: PROXIMATE CAUSE.  Where a cattle
2    guard was so filled with snow and ice as to furnish no obstruction to stock and there was an inducement for plaintiff's colts to follow other horses which had passed over the defective guard, the question whether the failure of defendant to keep the guard in proper condition was the proximate cause of the accident, was for the jury.

Instruction: WITHDRAWAL OF EVIDENCE.  In an action against a
3    railway company for killing colts claimed to have wandered onto the right of way over a defective cattle guard, an instruction withdrawing from the jury all questions of negligence in the operation of the train and directing them to give no consideration to evidence regarding the speed of the train

or ability of engine men to observe the crossing, was not misleading, as withdrawing evidence of the engineer as to what he actually saw at the time of the collision.

**Cattle Guards:** FAILURE TO KEEP IN REPAIR. Permitting a cattle guard to become filled with snow and ice so as to furnish no obstruction to the passage of stock is a failure "to maintain proper and sufficient cattle guards", within the meaning of sections 2022 and 2055 of the Code.

*Appeal from Cedar Rapids Superior Court.*—HON. J. H. ROTHROCK, Judge.

SATURDAY, APRIL 11, 1903.

ACTION for damages occasioned by a collision with two colts. Judgment as prayed, from which defendant appeals. —*Affirmed.*

*J. C. Cook* and *H. Loomis* for appellant.

*Rickel, Crocker & Tourtellot* for appellee.

LADD, J.—At about six o'clock in the morning of February 7, 1900, the defendant's passenger train killed two of the plaintiff's colts. They were kept on the farm of his brother, from whose barn yard about fifty yards north of the railroad, was a lane to a field on the south side of the track over a private crossing. On each side of this were cattle guards about forty feet apart. The evidence was such as to warrant the jury in finding the defendant negligent in not keeping the west cattle guard in repair, and in allowing it to become so filled with snow and ice as to furnish no obstruction to the passage of the stock. The issue tried was whether the death of the colts was the proximate result of defendant's neglect to properly maintain this guard. The theory of the plaintiff was that the colts had passed over the guard into the right of way and were there

1. INJURY to stock: defective cattle guards: proximate cause.

VOL. 120 IOWA.—15.

killed, while the defendant urged that they were either struck on the crossing or when on the guard, or possibly one of them beyond it, where they had run in their fright upon the approach of the train. The cattle guard was at a level with the ground, but to the west was a gradual fill to a culvert, seventy-five feet distant, where it was six feet above the surface. One of the colts was found beyond this culvert, and, as to it, the evidence was such as to leave no doubt as to the conclusiveness of the jury's finding upon this count. The other colt was about three and one-half rods west of the cattle guard and some fifteen feet north of the track. The engineer testified: "There was a horse that came on the crossing the same time the engine did, and they collided. It came from the right-hand side. It came on a run, and there was just a flash on the light of the headlight that gives me a view of the right of way several hundred yards—there was just a flash, and I knew I had struck him and threw him into the wing of the west cattle guard. I was about midway between the cattle guards when struck. The cattle guards were up high, and I saw them plainly." Other evidence tended to show that he was mistaken in fixing the locality where the collision occurred. The snow was knocked off the west end of the guard, and a splinter freshly broken therefrom. Dice testified: "There was nothing to show where they had been struck, only some tracks inside the guard, to show he had been inside, and there were some slivers on the cattle guard, and you could see the colt had been caught right in there. * * * Right where the first colt was caught it looked as if part of the footprints were right into the right of way just off the cattle guard, and it seemed as if his front foot was off and his hind foot inside the cattle guard, and it struck him so quick it probably knocked off the sliver from the cattle guard." Another witness said: "The snow was packed where the guard was splintered, and had been pushed away a foot or

where the horse had been struck." Had the colt been hit while on the crossing, it would seem that some indication thereof might have been found. In the absence of any such showing, this evidence of the condition of the guard, and the snow thereon, together with the place where the body was found, might have been accepted as being entitled to greater weight, in fixing the point of collision, than the testimony of the engineer. The difficulty of accurately observing the place from a train moving at the speed of forty miles an hour before daylight is apparent, and is illustrated by his failure to see the other colt, struck within a hundred feet from the first. As against the facts, if found as stated, the enigneer's testimony ought not to be accepted as a verity.

II. The colt in all probability had become frightened by the approach of the train, and had run on the guard in front of it in an attempt to go on the right of way, and appellant contends that it would have been as likely to have done so had the guard been in proper condition. The jury might have found that, but for the guard being filled with ice and snow, the other colt, and a horse which jumped the fence, would not have been on the right of way, and that had they not been there, this colt would not have undertaken to follow. Stock are generally turned by cattle guards when properly maintained, and where, as here, the guard furnishes no obstruction, and there is an additional inducement to follow other horses which have passed because of its defective condition, it is for the jury to say whether the failure to properly maintain the guard is the proximate cause of the injury such as is complained of. See *Pothast v. C. & G. W. R. Co.*, 110 Iowa, 458. Appellant has evolved the theory that the other horses had run in immediately ahead of the train. One witness testified that the tracks of the animal which jumped over the fence indicated that it had stopped frequently, and another witness

2. DEFECTIVE cattle guards: proximate cause.

noticed tracks to the culvert "along the side of the rails, and one between the rails.  *  *  *  At the culvert they were at the middle of the track.    There were tracks of a horse that was running fast, as if frightened." Aside from this, there was nothing to indicate how long they had been on the right of way.   From the fact that one had stopped frequently before escaping, and that the other one was struck when over the culvert, after running a distance not shown, the jury might have inferred they had passed over the guard some little time before the approach of the train, and at a time they would not have undertaken to cross had the guard been in repair and free from ice and snow.

III.   What has already been said disposes of the alleged error in refusing the sixth instruction requested by defendant, to the effect that the animals "arrived at the crossing at about the same time the engine did, and that in their fright, or in attempting to escape from the engine, they ran upon or across the cattle guards in question, and were struck, while so doing, either upon the crossing or upon the guards, or after having crossed the guards in their fright," the plaintiff might not recover, and that the burden of proof was upon him to show that the collision did not so occur.   Instead of this, the court charged the jury that: "It is claimed by the defendant that the colts of the plaintiff ran upon the crossing at about the same time that the engine arrived there, and that, in attempting to escape from the engine, they ran upon and crossed, or attempted to cross, the cattle guard, and were struck either while upon the guard or after having crossed the guard, in attempting to escape from the engine.   If you find the evidence to sustain the contention of the defendant as above set forth, then your verdict will be for the defendant." This was more favorable to defendant than the law warranted, for, as seen, if one colt attempted to cross when it would not have done so but for the defective condition of the guard, the plaintiff was

entitled to recover. The contention that this and the fourth instruction casts the burden of proof on the defendant is not sound. Both are silent as to that matter.

The eleventh instruction is criticised in that the jury was told that the burden of proof to establish all the material allegations by the petition was on plaintiff, without pointing out what these were. That had been done in the third and fourth paragraphs of the charge, and repetition was unnecessary. Moreover, had defendant desired a more specific instruction, it should have been requested. The same remark disposes of the exception taken to the twelfth instruction.

IV. The jury was instructed that: "The question as to whether the defendant was negligent in the operation of its train at and approaching the crossing in question is 3. INSTRUCTION; withdrawn from your consideration, and you withdrawal of evidence. will not, therefore, in arriving at your verdict, consider any evidence that may have been introduced as to the speed of the train or the ability of the engine men to observe the crossing as the train approached the same." Appellant insists this had the effect to withdraw the engineer's testimony as to seeing the colt run in front of the engine. The petition alleges that defendant did "so run and manage" the passenger train "that, by reason of the condition of said cattle guard, that same ran against the colts." And the manifest purpose of the instruction was to advise the jury not to consider the management of the train, or how far ahead engine men ought to be held to be able to see objects. It was admitted that no signal was sounded, and that the road to the east was straight and level. In these circumstances, we do not think the jury could have understood that the evidence of what the engineer actually did see was withdrawn, or any of the evidence bearing on the collision with the colts. Though the instruction is not as definite as could be desired, we are satisfied that the jury were not misled by it.

V. The corporation was bound, by section 2022 of the Code, to "make and keep in good repair" the cattle guard, and, under section 2055, "any corporation operating a railway, and failing to fence the same against live stock running at large and maintain proper and sufficient cattle guards at all points where the right to fence and maintain cattle guards exists shall be liable to the owner of any stock killed or injured by reason of want of such fence, or cattle .guards for the full amount of the damages sustained by the owner on account thereof unless it was occasioned by his willful act or that of his agent, and to recover the same it shall only be necessary for him to prove the loss of or injury to his property."

*4. CATTLE guards: failure to keep in repair.*

Appellant contends that permitting the guard to fill up with ice and snow, so as to obstruct the free passage of the stock, was not the "failing * * * to maintain proper and sufficient cattle guards" within the meaning of this section. This involves the assumption that the guard contemplated by the statute is the particular device made use of by the appellant. Any appliance which will keep animals from going upon the land adjoining the right of way, or from the latter on such land, satisfies the demands of the statute. *Missouri Pac. R. R. Co. v. Morrow,* 32 Kan. 217 (4 Pac. Rep. 87); *Missouri Pac. R. R. Co. v. Manson,* 31 Kan. 337, (2 Pac. Rep. 800). If carelessly allowed to become filled up with sand, as in *Pothast v. Ry. supra,* or with ice and snow as in this case, it is not a proper and sufficient guard, for it is not so maintained as to be adequate to .turn stock. · The abstract, without setting out the evidence, states that it warranted a finding that the defendant was negligent in this respect, and for this reason the care required in cleaning the guards in the winter season need not be considered. But see *Stacy v. Winona, etc. R. Co.* 42 Minn. 158 (43 N. W. Rep. 905); *Blias v. Minneapolis, etc., R. Co.,* 34 Minn. 57 (24

N. W. Rep. 558, 57 Am. Rep. 36); *Ind. etc., R. Co. v. Drum,* 21 Ill. App. 321. It is enough that the defendant was negligent in not maintaining the guard as the statute required.—Affirmed.