J. M. ADAMS v. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

1. KILLING STOCK — *Farm Crossings — Gates — Duty to Close.* A land-owner whose farm is divided by a railroad is entitled to necessary crossings; and where the railroad company fences its track through his farm, and constructs gates in the fences at such crossings for the accommodation of the land-owner or his tenant, the duty rests upon him to keep the gates closed, and if he neglects to do so, and his animals pass through them upon the track and are killed, without the negligence of those operating the trains, the railroad company is not liable for the loss.

2. TRESPASSING ANIMALS, *Killed — No Recovery from Company.* In such a case, where the animals of a third person jump into the inclosure, and are wrongfully upon the premises of such land-owner, and then pass through the gate and are killed by a train, without the negli-

11 — 46 KAS.

gence of those in charge of the same, the owner of such trespassing animals is entitled to no greater rights than the land-owner, and cannot recover from the company.

### Error from Shawnee District Court.

J. M. ADAMS brought an action against *The Atchison, Topeka & Santa Fé Railroad Company* for the value of a mule, which, it is alleged, was killed by the engine and cars of the railroad company, at a point on the road which was not inclosed by a good and lawful fence. The case was tried with a jury, which rendered a verdict in favor of the plaintiff and assessed his damages at $125, and awarded $25 as attorney's fees. The jury also returned the following findings of fact, in answer to special questions submitted to them by the defendant:

"1. Did not the animal of said plaintiff, which was killed, go from plaintiff's premises into Judge Carey's premises, and from thence onto the right-of-way of defendant railroad company; and was it not in the night-time? A. Yes.

"2. Was not the fence between the plaintiff's land and Judge Carey's land, at the place where the animal in question went upon Judge Carey's land, in a defective condition? A. Yes.

"3. How did the animal in question get from the plaintiff's land onto Judge Carey's land? A. By jumping the fence.

"4. At the time of the accident, was not the defendant's road or right-of-way inclosed with a good and lawful fence and a gate at the crossing to Judge Carey's land, good and sufficient to keep animals, such as mules, off from said right-of-way, if said gate were closed? A. Yes.

"5. How did the animal in question get from plaintiff's premises onto the right-of-way or track of the railroad company? A. Through the open gate.

"6. Was not the gate, through which the animal in question is supposed to have gotten upon the right-of-way of defendant, placed in the right-of-way fence separating Judge Carey's land from the railroad and at a private crossing, and placed there to be used by Judge Carey and his tenants in crossing said right-of-way to different portions of his farm? A. Yes.

"7. Who opened the gate and left the same remain open

last, prior to the escape of the animal through the same, prior to the accident? A. No evidence.

"8. How long prior to said accident had said gate remained open? A. The larger portion of a week.

"9. How was the animal killed, or what caused the accident? A. By the locomotive or cars of the defendant.

"10. Was the defendant guilty of culpable negligence, causing the injury and the death of the animal in question? A. Yes.

"11. If you answer the last question in the affirmative, state in what such negligence, if any, consisted. A. In not using more diligence in keeping the gate shut.

"12. Was said animal permitted to go upon Judge Carey's premises by leave or license of Judge Carey or his tenants? A. No evidence.

"13. If you answer the last question in the affirmative, state when such leave or license was given, and by whom. A. No evidence."

Upon a motion of the railroad company, the court rendered judgment in its favor on the special findings of the jury, and gave judgment in favor of the railroad company for its costs. The plaintiff complains of the ruling of the court in holding the special findings to be inconsistent with the general verdict, and in giving judgment thereon for the company.

*H. H. Harris*, for plaintiff in error.

*Geo. R. Peck*, *A. A. Hurd*, and *Robert Dunlap*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The railroad company is liable for injuring or killing animals in the operation of its railroad at any points on its road which might be, but are not, fenced; but in the present case the railroad company had inclosed its road, at the place where the mule went upon the railway and was killed, with a good and lawful fence, fully sufficient to have prevented the mule from going upon the road. The railway ran through Carey's land, and the fences had been provided with gates, so that he and his tenants might pass from one portion of the farm to the other. The mule which was killed

went through a gate which had been left open by some one, but it does not appear that the gate was opened by the railway employés. There was no evidence to show who left the gate open before the killing of the mule, but as the crossing and gates were provided for the accommodation of the landowner, to be opened and closed at his convenience, the presumption, if any arises, would be that he or his tenants left it open. It is the statutory duty of the railroad company to make and maintain sufficient and secure fences on either side of its railroad, and if it fails to erect a sufficient fence it is liable for animals killed, without proof of negligence on the part of the company. But where it has built a good and sufficient fence, with suitable and sufficient gates at the necessary crossings, it has performed its statutory duty, and nothing more is required except to maintain the inclosure. Where the railroad separates the different parts of the farm, the landowner is entitled to driveways and farm-crossings, in order to enable him to go from one portion of the farm to another, (*K. C. & E. Rld. Co. v. Kregelo*, 32 Kas. 608,) and in order to utilize such crossings, it is necessary that gates should be placed in the fences erected by the railroad company. Having provided gates at these crossings for the convenience of the land-owner, whose duty is it to keep the gates closed? He may open the gates as often as his convenience or necessities may demand. When he may desire to open and use the gates, or how long it may be necessary that they should remain open, the employés of the railroad company cannot know. As he may open and close them at his convenience, and without the knowledge of the company, he must in the nature of things be held responsible for the closing of the gates. The making of crossings and the placing of gates in the fences, so that the crossings may be used, is of no advantage to the company. They only increase the hazard and expense, and doubtless the company would prefer that the fences were without gates or openings. But the land-owner is entitled to necessary crossings, and cannot be deprived of their use by the company. As he may use them at will, in the ab-

sence of the employés of the railroad company, the gates are within his control, and the duty of keeping them closed must rest on him. To place upon the railroad company the responsibility of keeping the gates closed, would require that an employé of the company should be stationed at every crossing to see that the land-owner performed the implied obligation resting upon him of closing a gate provided for his special benefit. This would be an impracticable and unreasonable burden, and was manifestly not within the contemplation of the legislature. If the fence provided by the railroad company was defective, or the gate and its fastenings insufficient, then a different rule would apply; but in this case, the sufficiency of the fence constructed by the railroad company and the gate which it provided is not questioned. We think it is clearly the duty of the land-owner or his tenant to close the gates and keep them closed, and if he neglects to do so, and his stock is killed or injured, without the negligence of those operating the trains, the railroad company is not liable. If the owner of the land, who is responsible for the closing of the gate, could not recover, does Adams, whose mule broke into Carey's inclosure, occupy any better position? It appears that the fence between plaintiff's land and Carey's was defective, and that the mule jumped into Carey's inclosure in the night-time, and went through the gate constructed for the use and accommodation of Carey, upon the railroad track, and was killed. As his mule was a trespasser upon the Carey farm, and as the injury and loss occurred through his negligence and wrong, he is entitled to no greater rights than Carey would have, and is not entitled to recover.

The case of *Railroad Co. v. Adkins*, 23 Ind. 340, is a case directly in point; and, although the authority of that case has been questioned in the later cases, we think it contains the better reasoning, and correctly decided the law. (See, also, *Harrington v. Rld. Co.*, 71 Mo. 384; *Binicker v. Rld. Co.*, 83 id. 660; *Hook v. Rld. Co.*, 58 N. H. 251; *Rld. Co. v. Etzler*, 40 Am. & Eng. Rld. Cases, 205, 208; *Rld. Co. v. Shimer*, 17 Ind. 295; *Rld. Co. v. Mosier*, Ind., 17 N. E. Rep. 109; *Rld.*

*Co. v. Rollins,* 5 Kas. 167; *Rly. Co. v. Methven,* 21 Ohio St. 586; *Eames v. Rld. Co.,* 96 Mass. 151.)

We think the district court reached a correct conclusion, and therefore its judgment will be affirmed.

All the Justices concurring.