### D. O. SWANSON v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

May 9, 1900.

Nos. 11,900—(8).

**Railway—Duty of Closing Farm Gates.**

It is the duty of the landowner for whose benefit and convenience gates are constructed and placed in a railroad right-of-way fence at a private farm crossing upon the land of such owner to keep such gates closed.

**Same—Duty of Railway Company.**

The railway company owes no duty to the landowner at whose instance and for whose convenience and upon whose land such gates are put into the railroad fence, or to those in privity with him, to keep such gates closed. Its full duty is performed if the gates are kept in reasonably good repair.

Action in the district court for Goodhue county to recover $300 damages for the killing of plaintiff's horses, by reason of defendant's negligence in failing to build, maintain, repair, and keep closed a fence. The case was tried before Williston, J., who, at the close of plaintiff's testimony, granted defendant's motion to dismiss the action. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Albert Johnson,* for appellant.

It was the duty of the company to shut the gate and repair the fence. The case should have been submitted to the jury. G. S. 1894, §§ 2693, 2695; Green v. St. Paul, M. & M. Ry. Co., 60 Minn. 134; Chisholm v. Northern Pac. R. Co., 53 Minn. 122; Savage v. Chicago, M. & St. P. Ry. Co., 31 Minn. 419; Watier v. Chicago, St. P., M. & O. Ry. Co., 31 Minn. 91; Evans v. St. Paul & S. C. R. Co., 30 Minn. 489; 3 Elliott, Railr. § 1200; 1 Rorer, Railr. 495, 496. There is no evidence that the gate was constructed for benefit of the landowner, and the court had no right to assume that fact. If the road was constructed since 1887, the gate would be an important item, and the privilege to put it in was a benefit to the

company. G. S. 1894, §§ 2696, 2697; Schmidt v. Minneapolis, L. & M. Ry. Co., 38 Minn. 491. The company was bound to keep the gate closed, or to use reasonable care. Greeley v. St. Paul, M. & M. Ry. Co., 33 Minn. 136. It made no difference whether the horses passed out in that part covered by the gate or in that part covered by the posts and wire. Both were open, and the company was obliged to use reasonable care to know the condition of each. None of the cases go to the extent of holding that plaintiff would be required to show the place of entry with any greater certainty.

The statute creates the liability, and contributory negligence is no defense. Shepard v. Buffalo, 35 N. Y. 641; Corwin v. New York, 13 N. Y. 42; Jeffersonville v. Ross, 37 Ind. 545; Louisville v. Whitesell, 68 Ind. 297; Lloyd v. St. Louis, 128 Mo. 595; Flint v. Lull, 28 Mich. 510; Nashville v. Nowlin, 1 Lea, 523; Railroad v. Walker, 11 Heisk. 383; Nashville v. Carroll, 6 Heisk. 347; Railway v. Foster, 88 Tenn. 671; Macon v. Davis, 27 Ga. 113; Macon v. Winn, 26 Ga. 250; Atlanta v. Ayers, 53 Ga. 12; Kain v. Larkin, 56 Hun, 79; Jones v. Louisville, 82 Ky. 610; Illinois v. Dick, 91 Ky. 434; Louisville v. Coniff (Ky.) 27 S. W. 865; Chesapeake v. Yost (Ky.) 29 S. W. 326; Catlett v. Young, 143 Ill. 74; Quackenbush v. Wisconsin, 71 Wis. 472; Queen v. Dayton, 95 Tenn. 458; Rowell v. Railroad, 57 N. H. 132; Mathews v. St. Louis, 121 Mo. 298. Turning out cattle with knowledge of defects in the fence is not as matter of law contributory negligence. Schubert v. Minneapolis & St. L. Ry. Co., 27 Minn. 360; Johnson v. Chicago, M. & St. P. Ry. Co., 29 Minn. 425; Watier v. Chicago, St. P., M. & O. Ry. Co., supra; Green v. St. Paul, M. & M. Ry. Co., 55 Minn. 192; Ericson v. Duluth & I. R. R. Co., 57 Minn. 26; Evans v. St. Paul & S. C. R. Co., supra. Contributory negligence is an affirmative defense, and must be proved by the party relying on it. Hocum v. Weitherick, 22 Minn. 152.

*F. W. Root*, for respondent.

Defendant was not shown to have been negligent. Where a railroad constructs gates in its right-of-way fence solely for convenience and benefit of an adjoining landowner, the duty to keep the gates closed rests on him and not on the company; and this is especially true where the landowner owns and controls the land on

both sides of the track. Adams v. Atchison, 46 Kan. 161; Texas v.
Glenn, 8 Tex. Civ. App. 301; Bond v. Evansville, 100 Ind. 301;
Hook v. Worcester, 58 N. H. 251; Eames v. Boston, 96 Mass. 151;
Waldron v. Portland, 35 Me. 422; Megrue v. Lennox, 59 Oh. St. 479;
Diamond v. New York, 58 Hun, 396. These gates having been con-
structed solely for benefit of plaintiff or his landlord, he owning
and occupying the land upon both sides of the track and thereby
controlling both gates, if the gates are found open the presump-
tion is that either he, or some one representing him, left them open.
Harding v. Chicago, 100 Iowa, 677. Plaintiff's negligence was con-
clusively shown. Ericson v. Duluth & I. R. R. Co., 57 Minn. 26, 28;
Peterson v. Northern Pacific, 86 Wis. 206; Carey v. Chicago, 61
Wis. 71.

BROWN, J.

This is an appeal from an order of the district court of Goodhue
county denying plaintiff's motion for a new trial after verdict for
defendant. The action is to recover the value of certain horses
heretofore owned by plaintiff, alleged to have strayed upon defend-
ant's railroad track through a defective fence along defendant's
right of way, and killed by one of its locomotives.

At the time the horses were killed, plaintiff was in possession of
the land described in the complaint, and had been in the possession
thereof, as tenant of the owner, for fifteen years prior thereto.
During the year 1897 he used said land as a pasture for his horses
and cattle. The railroad track of defendant extends across the
southeast corner of this pasture, running in a northeasterly direc-
tion, leaving a very small portion of land in the southeast corner
of the tract. In compliance with the statutes of the state, defend-
ant constructed a fence on each side of its right of way as it ex-
tends across said land, and at the instance and for the convenience
of the owner of the land put into such fence gates on each side of
the track at a private wood road leading from plaintiff's land "onto
the lowlands south of the track." These gates were in the fence
during all the time of plaintiff's occupancy of the land. Soon after
the horses were killed, plaintiff examined the railroad fence, and
discovered that the gate leading from the pasture into the right
of way was open, and also that at a short distance from such gate

the fence was partly down, and considerably out of repair.   Plaintiff turned his horses into the pasture the day of the accident. They made their way into the right of way, either through the open gate or at the point where the fence was out of repair, and were killed.   There is no evidence showing at which point they passed through the fence.

Plaintiff's counsel contends that it is immaterial whether they passed through the gate or at the point where the fence was out of repair.   His contention in this respect is correct if it be held that the railroad company was in duty bound to keep the gate closed. There is no evidence showing by whom the gate was left open. Whether by plaintiff's servants or by some third person does not appear.   The gate was not used by defendant, and the evidence furnishes no suggestion that its servants had left it open.   If it be held that the defendant was under no duty or obligation to keep the gate closed, the order appealed from must be sustained, because there is no evidence to justify a finding that the horses entered the right of way at the point where the fence was out of repair.   If such is the law, it was incumbent on plaintiff to show a failure of duty on the part of defendant with respect to keeping its fence in good repair, and that such failure of duty was the direct and proximate cause of the injury sustained; in other words, that the horses entered upon the right of way at the point where the fence was defective, and not at the gate.   It is not claimed that the gate was not in reasonably good repair.   So we are confronted with the question whether it was the duty of the defendant to keep the gate closed.   The question is of more than passing importance, and we have given it a thorough and careful consideration.

Our statutes provide that all railroad companies in this state shall build or cause to be built good and sufficient cattle guards at all wagon crossings, and good and substantial fences on each side of such road, and maintain the same.   G. S. 1894, § 2696, provides:

"That whenever a railroad shall hereafter be laid out, opened, and fenced through the farm lands of any owner of such lands in this state, leaving parts of such lands on both sides of such railroad,

the said railroad * * * shall construct a necessary crossing or crossings, under, over or across such railroad, for the passage of stock to and from such parts of such land."

We deem the evidence sufficient to justify the conclusion reached by the trial court that the gates were placed in the fence by the railroad company at the instance and for the convenience of the owner of the land. The evidence furnishes no intimation that they were for the use of the railroad company. They were evidently not constructed or intended as a compliance with section 2696, above quoted; at least there is no evidence that the very small tract of land south of the railroad track was used in connection with that portion north of the track, or used at all. The gates were constructed at the wood road leading from plaintiff's land north of the track to the lowlands on the south, which road was used by the plaintiff and others in the neighborhood, with his apparent permission, principally in the winter season. Plaintiff and his neighbors were the only persons using such road, and the only persons passing through the gates. It cannot be presumed that the defendant's employees left the gates open. Indeed, inasmuch as the gates were upon the premises of plaintiff, and under his control, the natural presumption would be that he, or those representing him, left them open. But this is not important. The plaintiff rests his case upon the square proposition that it was the duty of defendant to keep the gates closed as a part of its duty to "maintain" the fence. In this we cannot concur.

No case involving the precise point has ever been before this court, and we are confronted with the question for the first time. It has been before the court of last resort in other states, and the trend of the later decisions relieves the company of the responsibility as to the landowner for whose benefit the gates are placed in the fence, and casts the duty of keeping the gates shut upon the latter. The company's duty is fully performed if it constructs a suitable gate, and keeps and maintains it in reasonably good repair. Adams v. Atchison, 46 Kan. 161, 26 Pac. 439; Texas v. Glenn, 8 Tex. Civ. App. 301, 30 S. W. 845; Bond v. Evansville, 100 Ind. 301; Eames v. Boston, 96 Mass. 151; Diamond v. New York, 58 Hun, 396, 12 N. Y. Supp. 22; Megrue v. Lennox, 59 Oh. St. 479, 52 N. E. 1022;

San Antonio v. Robinson, 17 Tex. Civ. App. 400, 43 S. W. 76; Box v. Atchison, 58 Mo. App. 359.

We believe this rule to be consistent, and in accord with the plainest principles of equity and justice, and we adopt it as the law of this state. It can work no hardship to the landowner. He and his servants can, without the least inconvenience, keep the gates closed, and the railroad company should not be burdened with responsibility for their neglect to do so. To impose the duty upon the company, at least as respects the landowner, for whose benefit the gates are erected, and those in privity with him, would be, it seems to us, extremely unreasonable and unjust. It would be impracticable for the company to perform the duty, if imposed upon it, without keeping an employee constantly on the watch to guard and protect the landowner from his own neglect. And a construction of the law in harmony with appellant's contention would result in relieving the landowner of all responsibility with respect to keeping the gates closed, and cast the entire burden on the company. We cannot concur in this view of the law, or adopt the theory of appellant's counsel. Our statutes not only require the railroad company to construct a fence, but to maintain the same after it has been constructed; and counsel insists that a failure to keep such gates closed is a failure to maintain the fence. The contention is untenable. If the gates are kept in a reasonably good condition of repair, they are sufficiently "maintained," within the meaning of the statues.

We do not wish to be understood as holding that this rule is applicable to any person or persons other than the landowner for whose convenience and benefit the gates are placed in the fence, and those in privity with him. The question of liability of the company as to third persons who suffer damage by reason of such gates being left open is not decided. Perhaps, if the company furnished the landowner a lock and key for such gates, it would be relieved from liability even as to such third persons, within the meaning of G. S. 1894, § 6889. But this statute cannot be construed as casting the burden of keeping the gates closed upon the company, at least not as to the landowner.

Our conclusion is that the learned trial judge properly dismissed the action, and the order appealed from is affirmed.