J. B. BERTRAND, *Appellee,* v. THE KANSAS CITY, MEXICO & ORIENT RAILWAY COMPANY, *Appellant.*

No. 16,918.

SYLLABUS BY THE COURT.

1. RAILROADS—*Private Farm Crossing—Duty of Landowner to Keep Gate Closed.* An owner through whose farm a railroad is built and fenced and for whose convenience and benefit a private crossing is made and gates are put in, so that he can pass from one part of his farm to the other, has control of the gates and the duty of keeping them closed rests upon him.

2. ——— *Rights of Owner of Trespassing Stock.* Ordinarily a third party whose stock are trespassing upon the land through which the railroad is built, and pass through a gate left open by such adjoining owner and are injured or killed by a railroad train, has no better right to recover from the railway company for the loss than would the adjoining owner for a like loss of his own stock by the same means.

3. SPECIAL FINDINGS—*Evidence Insufficient to Support.* Special findings that a gate had been closed, but that on the occasion of the collision it had been blown open by the wind, because of the insecure fastenings of the gate, are held to be without support in the testimony.

Appeal from Sedgwick district court. Opinion filed March 11, 1911. Reversed.

*John A. Eaton, D. W. Eaton,* and *Holmes & Yankey,* for the appellant.

*Frank Nighswonger,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action J. B. Bertrand asked and recovered damages from the Kansas City, Mexico & Orient Railway Company for striking and killing his mare and injuring two of his colts on the right of way of the railroad. The animals escaped from the owner and went upon an adjoining farm, belonging to Stephens, through which the railroad was built. The

railroad was fenced through Stephens's land, but the animals passed through an open gate and out upon the railroad, where they were run down and injured. The recovery is based upon the insufficiency of the gate and its fastenings. It is insisted by the railroad company that the findings and verdict are not supported by the testimony.

The jury found that the gate was opened by the wind, that it had been open five hours, and that it did not have a proper fastening. The gate was at a private crossing, put in for the accommodation of the landowner, and was a regulation gate such as is used on appellant's railroad system. It was a five-board gate, with braces. One end of the gate was placed between two posts, one slightly behind the other, through which a bolt passed, and on this bolt the stationary end of the gate rested. There were two posts at the other end, tied together with a bolt, and the swinging end of the gate was passed between these posts and rested on the bolt. To open the gate the swinging end is pulled back off the bolt and from between the posts, and is then lifted and carried around until it is open. The gate does not swing on hinges, and if the swinging end were pulled off the bolt and from between the posts that end would drop upon the ground of its own weight and remain there unless carried around by some person or force.

The gate, as we have seen, was at a private crossing, and was put in by the railroad company for the convenience and benefit of the landowner. Having been put there for his use, it devolved on him to see that it was kept closed. The law requires a railroad company to fence its tracks, and, failing in that, it is made liable for animals killed on the track, although there may be proof of no other negligence on its part. To meet the requirements of the law the railway company whose line passes through a farm must make private cross-

ings where it is practicable, and build gates in the fences, so that the landowner can pass from one part of his farm to the other. The landowner, for whose benefit the private crossing is maintained and gates are built, and who may open and close them at his own convenience, must of necessity keep watch over them and keep them closed. As to the adjoining owner, the company has done its duty when it provides crossings and gates. In such a case it has been said:

"As he may use them at will, in the absence of the employees of the railroad company, the gates are within his control, and the duty of keeping them closed must rest on him. To place upon the railroad company the responsibility of keeping the gates closed would require that an employee of the company should be stationed at every crossing to see that the landowner performed the implied obligation resting upon him of closing a gate provided for his special benefit. This would be an impracticable and unreasonable burden, and was manifestly not within the contemplation of the legislature." (*Adams v. A. T. & S. F. Rld. Co.*, 46 Kan. 161, 164.)

The rule here is that if the animals of a third person trespass upon the premises of the adjoining owner, and pass through a gate left open and are killed, the owner of the trespassing animals occupies no better position than the one for whom the gate was put in. (*Adams v. A. T. & S. Rld. Co.*, supra.) The evidence in this case tends to show that the gate, instead of having blown open, had been allowed to stand open for a considerable time. What the rule would be if the gate stands open so long that the company knew, or should have known, that the inclosure was incomplete, and in a case where there was no negligence of a third party, does not require decision here.

Appellee's animals escaped from his control the night before they were injured. He tried to recover them, but darkness came on and he gave up the search until the next morning, and early in the morn-

ing they were struck by the train. He contends, however, that the gate was in fact closed, and that by reason of an insecure fastening it was blown open by the wind and had been open only five hours when his animals passed through the gate. Special findings were returned to this effect, but we think that the testimony does not warrant findings that the gate was closed prior to a storm which occurred the night before the accident or that it was opened by the wind. There may be some reason for a dispute as to the plan of the gate—whether the fastenings were such as to make an efficient inclosure. It was of the same design as all the gates of appellant, and if properly closed it would seem that it should be reasonably secure. The theory of appellee is that the gate in question was lower at one end than at the other, and that when the wind blew hard and shook the gate it would naturally slip back on the iron bolt and from between the posts, and that when the fastened end was released and settled down to the ground it could be blown open by a strong wind. It appears that it was only an inch, or at most an inch and one-half, out of level, but the testimony does not support the theory that the gate was closed the night before the accident, nor yet that it was opened by the wind because of an insecure fastening. The testimony in behalf of appellee tends to show that the gate was not closed and had not been for some time before the night of the accident. His own testimony was that it had been open for some time. Another of his witnesses said he had not seen it closed until after the accident, and still another witness, who had an opportunity to know, stated that it had been standing open for a long time before the animals were struck. This testimony was not contradicted, and yet the jury stated, in answer to questions, that the gate was opened by the wind and that it had been open for about five hours. The fact that there was a storm during the night does

not tend to show that the gate was closed before the storm, nor overcome the testimony that it had been standing open for days before the injury and loss. There is no sufficient basis for the answer that the gate had been open for five hours, nor that the loss resulted from the fact that there were no proper fastenings on the gate. These were important findings, and as they were made in disregard of the testimony and are without support the verdict must be set aside.

The judgment is reversed and the cause remanded for a new trial.