ELIAS PLUMMER, *Appellee*, v. THE ATCHISON, TOPEKA
& SANTA FE RAILWAY COMPANY, *Appellant*.

No. 17,491.

SYLLABUS BY THE COURT.

NEGLIGENCE—*Injury to Stock—Private Railroad Crossing*. Negligence is not imputable to a railway company merely because it did not insist upon the performance of the landowner's duty to keep a gate in a right-of-way fence at a private crossing closed, or else permanently close the gate, in consequence of which trespassing stock of a third person went through the open gate and upon the railway track, where they were killed by a passing train.

Appeal from Butler district court. Opinion filed March 9, 1912. Reversed.

*William R. Smith, Owen J. Wood*, and *Alfred A. Scott*, for the appellant.

*N. A. Yeager*, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued for the value of two colts killed by one of the defendant's trains. He recovered and the defendant appeals.

The evidence was that the colts went upon the defendant's right of way through an open gate at a private farm crossing on land not owned or occupied by the plaintiff. The gate and fence were not in perfect condition. Several persons were in the habit of using the crossing, and the gate was usually left open. In July, 1907, the defendant's section foreman shut the gate a number of times, sometimes as often as twice a day, but his efforts to keep it closed proving unavailing he quit shutting it after August 1. The colts were killed on October 26. The defendant had no use for the gate and did not use it.

The jury returned special findings of fact as follow:

"Q. 1. Was the plaintiff's land adjacent to defendant's right of way? A. 1. No.

"Q. 2. Over or through whose land did the animals in question pass before entering defendant's right of way?  A. 2. McWhorter and others.

"Q. 3. How did the animals in question get upon the defendant's right of way?  A. 3. By passing through open gate.

"Q. 4. If you answer question 3 that said animals passed through an open gate onto defendant's right of way, then please state who left said gate open?  A. 4. Section foreman.

"Q. 5. Was the defendant's right of way fenced at the time and at the place of the accident in question by a good, sufficient and legal fence?  A. 5. No.

"Q. 6. Was the gate in question placed in the right-of-way fence at a private farm crossing?  A. 6. Yes.

"Q. 7. How were the animals in question killed or injured?  A. 7. By moving train.

"Q. 8. Was the defendant guilty of negligence causing the injury and death of the animals in question?  A. 8. Yes.

"Q. 9. If you answer question 8 'Yes' or in the affirmative, then please state in what said negligence consisted.  A. 9. By not insisting upon gate being shut or permanently closing same.

"Q. 10. Was the gate in question in such condition at the time of the accident as to be opened and shut as gates usually are?  A. 10. No."

The defendant moved for judgment on these findings, notwithstanding the general verdict, but the motion was denied.

The ninth finding, that the defendant's negligence consisted in not either insisting upon the gate being shut or else closing it permanently, excludes all other negligence. Since the colts got upon the defendant's right of way through the open gate the sufficiency of the rest of the fence is not material. Whatever its condition it did not contribute to the injury, and the jury did not charge the defendant with negligence in respect to it. There is no evidence that the section foreman opened the gate and left it open, and negligence is not imputed because the section foreman did not himself close it. Although the gate was not in such

a condition that it could be opened and shut as gates usually are, the jury did not attach negligence to that fact, and it follows from the ninth finding that the gate would have sufficiently closed the opening in the fence if only the defendant had insisted that the gate be used for that purpose. In the opinion of the jury, therefore, the sole fault of the defendant lay in negligently failing to perform a supposed duty to see that somebody else performed the duty to shut the gate, or else fence up the opening permanently.

The liabilities imposed upon the defendant for failure to fence its right of way were intended to secure safety to persons and property upon moving trains as well as to secure protection to stock. Therefore it is said that the fencing of a railroad track is a public duty. (*Sherman, Adm'r, v. Anderson*, 27 Kan. 333.) But the duty is qualified by the right of the landowner to such private crossings as are not inconsistent with the use of the right of way for railroad purposes. (*K. C. & E. Rld. Co. v. Kregelo*, 32 Kan. 608, 5 Pac. 15.) When a landowner who is entitled to a private crossing is provided with a sufficient gate the duty to the public is discharged so far as the defendant is concerned. Thereafter the public duty to keep the gate closed when not in actual use rests upon the landowner. He has no standing to claim that the railroad company should insist that he perform his own duty, and the owner of trespassing stock stands in the landowner's shoes. These principles are fully discussed in the cases of *Adams v. A. T. & S. F. Rld. Co.*, 46 Kan. 161, 26 Pac. 439, and *Bertrand v. Railway Co.*, 84 Kan. 343, 114 Pac. 214, and from them it follows that there is no basis for imputing a breach of duty to the defendant because it did not summarily adjudge and execute a forfeiture of the landowner's right to a private crossing. The result is that the two grounds upon which the jury predicated liability fail and the court is not permitted to assume or to substitute others.

If the jury had found that the defendant was remiss in allowing the gate to stand so long without swinging it into position a different question would be presented. But the findings indicate a belief that the defendant, through its section foreman, made abundant effort to keep the gate shut, without success.

The judgment of the district court is reversed and the cause is remanded with instruction to render judgment for the defendant on the findings of fact.