W. F. WILLIS, *Appellee,* v. CLARENCE D. SKINNER et al., Partners, etc., *Appellants.*

No. 18,038.

SYLLABUS BY THE COURT.

INCONSISTENT SPECIAL FINDINGS—*New Trial Granted.* Consistent special findings control the general verdict when contrary thereto; but when they are inconsistent with one another—some showing a right to a verdict and others showing the contrary—the case is left in the condition of being really undecided, and a new trial should be granted.

Appeal from Shawnee district court, division No. 1. Opinion filed March 8, 1913. Reversed.

*R. W. Blair, B. W. Scandrett,* and *C. A. Magaw,* all of Topeka, for the appellants.

*D. H. Branaman,* of Topeka, for the appellee.

The opinion of the court was delivered by

WEST, J: The plaintiff sued for injuries received while unloading marble for the defendants. A transfer wagon containing marble slabs, some of which were four to seven feet long and four to six feet wide, was standing alongside the walk. The slabs were standing on edge in the wagon, those on the right having been unloaded before the plaintiff was put at the task. Several men were engaged in carrying them into the build-

10—89 KAN.

ing, and two were engaged in getting them out of the wagon. The foreman and one of the defendants appear to have been at the place overseeing the work. The plaintiff alleged that he was directed by the foreman to get into the wagon and assist two other men to put out the marble to other men who were on the pavement below; that upon obeying the direction, the foreman ordered one of the other men out, leaving only the plaintiff with one other to handle the marble; and that on account of the negligence of the defendants in removing part of the help, and on account of their failure to keep in the wagon a sufficient force of men to handle the marble, and on account of ordering plaintiff to place something under the end of a slab about to be removed, which he was in the act of doing, a large number of pieces of the marble fell over upon him, seriously injuring him. In another paragraph he alleged that all of the injuries were caused wholly by the negligence, carelessness and failure of the defendants to properly provide him with a reasonably safe place to work, and by ordering and directing him into an unsafe and dangerous place to work, well knowing it to be unsafe, and in removing a part of the help from the wagon, thereby leaving an insufficient number of men to do the work. A demurrer to the petition was overruled and an answer filed containing a general denial and pleas of contributory negligence and assumption of risk. The jury found for the plaintiff and answered a number of questions, by which answers it appears that the plaintiff knew the size of the slabs when he got into the wagon; that there was nothing to prevent him from seeing the conditions which surrounded him, nothing to prevent the other workmen from holding the slabs up after the plaintiff was in the wagon; that there were two men assisting before he got in, but that one of them exchanged places with the plaintiff; and that the place where the injury occurred was not a reasonably safe

place to work because there were not enough men to perform the labor. The fourteenth and fifteenth questions and answers were as follows:

"14. Were the defendants guilty of any negligence toward the plaintiff? Ans: Yes.

"15. If you answer the last question yes, then state in what particular they were negligent. Ans: Not men enough in wagon to perform the labor."

The twenty-first question and answer were:

"If the plaintiff had exercised ordinary care could he have prevented the accident and avoided the injury of which he complained? Ans: He did, but was unable to avoid accident."

A demurrer to the evidence, a motion for judgment on the findings, a motion to set aside the findings and a motion for new trial were overruled, and the defendants appeal.

It is earnestly contended that the facts do not entitle the plaintiff to recover; that he had full opportunity to see and appreciate the situation; that he assumed whatever risk there was; and that the finding of the jury that the alleged negligence consisted of insufficient help excludes all other negligence from the case. The defendants cite *Plummer v. Railway Co.*, 86 Kan. 744, 121 Pac. 906, wherein several acts of negligence were alleged and the only one found was in reference to keeping a certain gate closed, which was said to exclude all other negligence. The finding that there were not enough men in the wagon to perform the labor must of course be considered in the light of the situation disclosed by the evidence, and implies that the work required of the plaintiff was such as to be dangerous unless he were provided with sufficient help. It appears from the evidence that the plaintiff, a man some sixty-five years old, unfamiliar with this kind of work, after having assisted in carrying in one or two slabs, was directed to get into the wagon and help unload others, and complaint having been made that the

first one which he helped to unload had become chipped, he was ordered to put a stick under the next one so that it would not be injured in taking it from the wagon; that as he stooped down to do this the other man was at the farther end of the slab ready to push it out, when it, with the others, fell over upon the plaintiff and injured him. When loaded, there were five or six slabs on either side of the wagon, leaving a space in the center of about three feet. They were set edgewise and rested on strips of inch and a quarter lumber running crosswise of the wagon bottom. They weighed about 600 pounds each, and it required at least four men to carry the heavier ones from the wagon into the building where they were to be used. The plaintiff's own testimony was to the effect that as he was getting the first slab out one of the defendants complained that he knocked a piece off, and said: "Take that piece there and put it under that other one so it won't scratch when you take the other one out;" that he tried to put the piece under, when it fell over on him; "I went to try to put this piece under. I first had to pull it out from against the other slabs; they were setting up on this side; I had to pull it out a little, so as to lift that up to get that end; I got it out about four inches."

"Q. Tell what occurred while you were at work there moving this slab. Ans. When I got it out about four inches I would judge, I catched down to try to raise it up so I could put this piece under it so when we went to slide it out it would n't catch on this iron as he told me to do; they started over on me and I raised up as quick as I could and throwed my hands up to catch this way (indicating) and they were so heavy they mashed me."

In cross-examination he testified:

"When I pulled them over I took the other hand and was trying to raise it with this hand, trying to slip it under, trying to see if I could n't raise it up enough.

"Q. Now when you got in the wagon there, you saw the situation, did n't you? Ans. I could see at the

time, a moment's time; I never thought of any danger when I got in there.

"Q. It did n't look dangerous to you? Ans. I did n't think about it.

"Q. You did n't think anything about it one way or the other, did you? Ans. No, sir; I just got in there; I got in according to orders.

"Q. You knew if they had a jar, or if they were pulled away from the wagon so that the top come over towards you, they would come on over that way, did n't you? Ans. Yes, sir.

"Q. You knew the danger of the slabs falling over on you if he did n't hold them, did n't you? Ans. No, sir; I did n't think they would hurt me if they did fall over on me; I did n't know they would hurt me so bad.

"Q. You did n't think they were dangerous at all, then? Ans. I did n't think they were that dangerous. I did n't think they would break my arms and ribs and mash me up like they did; I did n't think they would do that, no, sir. I never seen slabs like them before. I never handled anything like that. I have been a farmer all my life."

He also testified that he did not think they would have fallen if the man in the wagon had had his hand on them and held it there.

There is room to argue that any man with fair eye-sight and common experience would know that a heavy marble slab set on edge might fall over and injure any one caught thereunder, and that with this knowledge the plaintiff assumed the risk of the work. On the other hand, it might be said that the plaintiff was not familiar with the work of handling material of this kind, and being called on to assist others who presumably were, he sought to obey the orders which were given him, not observing any immediate danger and not stopping to ascertain whether he was ordered into a place and directed to a task likely to bring harm to him, but, assuming that he could safely obey orders, proceeded to do so, and was seriously injured.

The whole situation presented questions of fact as

to negligence, contributory negligence and assumption of risk, which were properly submitted to the jury.

After answering that the particular negligence was "Not men enough in wagon to perform the labor," the jury also found that Jennings, the other man, could not with ordinary care have prevented the slabs from falling. But in answer to question No. 5, "Was there anything to prevent Mr. Jennings from holding the slabs up after Mr. Willis got into the wagon?" they answered "No." This is utterly inconsistent with the other answers just referred to, and equally inconsistent with the general verdict. An attempt to harmonize such findings would be hopeless. Under such circumstances the motion for a new trial should have been granted. When the special findings taken together consistently show a right contrary to the one evidenced by the general verdict, they are controlling as a matter of statute law. (Civ. Code, § 294.) But when they are inconsistent with one another, some harmonizing with the general verdict and others in direct conflict therewith, then neither party is entitled to a judgment. (*Edwards v. Railway Co.*, 86 Kan. 257, 119 Pac. 872.) While the general verdict alone might entitle the plaintiff to a judgment, its effect is neutralized by the special finding which shows that he is not thus entitled, and this is not overcome by others inconsistent with it, for it amounts to finding both ways, and the court can not regard one and disregard the other. Hence such inconsistencies leave the matter in such uncertainty that in effect it is still undetermined whether or not the plaintiff ought to recover. The court is of the opinion that such is the condition presented by this record.

The judgment is therefore reversed and the cause remanded with directions to grant a new trial.