HENDERSON v. THE C. R. I. & P. R. Co.

**Railroads: PRIVATE CROSSING: NEGLIGENCE.** When a railroad company has provided a private crossing, and supplied the necessary gates and bars, it is only held to the exercise of reasonable diligence and care to keep them closed; and it is not responsible for any injury sustained by a third party, which is occasioned by the negligence of him for whose benefit the crossing is provided.

*Appeal from Polk District Court.*

WEDNESDAY, SEPTEMBER 23.

ACTION for the recovery of double the value of a mare killed on defendant's road. Jury trial. Verdict and judgment for plaintiff for $270. Defendant appeals. The facts are stated in the opinion.

*Gatch, Wright & Runnells,* for appellant.

*Polk, Hubbell & Goode,* for appellee.

DAY, J.—The Chicago, Rock Island & Pacific Railroad runs east and west past, and immediately south of, the residence of one Lysander Harvey. The Des Moines Valley Railroad runs about seventy feet from, south of, and parallel to, the Chicago, Rock Island & Pacific. The public highway extends along and immediately south of these railroads, and crosses them from one hundred and twenty-five to one hundred and fifty yards west of Harvey's house.

There is a fence on the north of, one on the south of, and one between the two roads. Harvey has a private crossing over both railroads south to the highway, gates for that purpose being placed in these fences. An open lane extends from Harvey's house to the public crossing. Through this lane Harvey can reach the public crossing by traveling from one hundred and twenty-five to one hundred and fifty yards. The evidence tended to show that the gate immediately south of Harvey's house was almost always open, and that the animal in question reached the railroad through one of these gates.

The court gave the following instructions, which are assigned as error:

" 7. If a railroad company put gates or bars in their fence at a point where they have a right to fence, for the accommodation of a private individual, the company assumes that the party for whose benefit such gates or bars are put in will be careful and diligent in keeping the same closed; if he fails in this, and negligently and repeatedly leaves such gates or bars open, and the company or its agents have knowledge of these facts, it would have the right, and it would be its duty, to take out such gates or bars and build in their place a substantial fence; and if they fail to do so after being thus advised, they would be guilty of negligence, and if the stock of a third party, not at all at fault with respect to such gate or fence, gets upon the track of the company through such gate or bars, and is injured or killed, the company would be liable therefor."

" 8. The law requires of the company a sufficient fence, and if they choose, through accommodation to another, to permit gates or bars to take the place of such fence, they should see to it that such gates or bars are kept in proper condition and shut, and if the party for whose benefit the same were put in does not keep them shut, but persistently leaves them open, to the knowledge of the company, then his negligence becomes their negligence, and they would be liable for injury sustained by a third party on account of the insufficiency of such fence as a barrier to protect stock."

These instructions, in the broad and unqualified sense in which they express the law, are erroneous.

The Revision, § 1329, provides that " when any person owns land on both sides of any railroad, the corporation owning such railroad shall, when required so to do, make and keep in good repair one causeway or other adequate means of crossing the same." In *Gray v. The B. & M. R. R. Co.*, 37 Iowa, 119, we held that where a railroad intervenes between one's residence and the highway, he is entitled to an adequate means of crossing the same. The statute making a railroad company absolutely liable for all injuries resulting from a failure to

fence at all points where it has a right to fence, is equivalent to one making it the duty of a railroad to fence at such points. These duties are, to a certain degree, and in a certain sense, antagonistic. Where they coexist neither can be as perfectly discharged as if the other were not required. The duty which arises out of these requirements is like a resultant motion in physics, which takes the direction of neither force, but one between, and dependent upon, both.

A fence with gates and bars, in the nature of things, cannot be as secure as an unbroken fence, for a gate is more liable to be left open, or a bar to be left down, than a fence is to be thrown over. And a crossing which can be used only by opening gates or removing bars is much less convenient than one to which there are no obstructions. And yet it is evident that if fences must be built, and at the same time private crossings must be furnished, in many instances gates and bars must be employed. It will not do to say that the whole difficulty can be obviated by the use of cattle guards and open crossings. These may do very well and be very proper in some places. And under certain circumstances it may be the duty of the company to provide them. But it is very apparent that in many cases their effect would be to throw cultivated land open to the common.

When a private crossing is necessary to enable a proprietor to reach the highway or adjacent parts of his own premises, such crossing is provided for the accommodation of the person for whom it is intended. But it is an accommodation which the railroad company is under obligation to furnish. When a company then discharges each of these duties, the duty to fence and the duty to provide a private crossing in a manner as perfect as either can be reasonably discharged consistently with the observance of the other, what further is required?

The seventh instruction declares that the company assumes that the party for whose benefit such gates or bars are put in will be diligent and careful in keeping the same closed. If he fails in this, and negligently and repeatedly leaves such gates or bars open, and the company has knowledge of these facts, it would be its duty to take out such gates or bars, and build

in their place a substantial fence; and if it failed to do so after being thus advised, it would be guilty of negligence. And the eighth instruction declares that the company should see to it that such gates or bars are kept in proper condition, and shut; and if the party for whose benefit the same were put in, persistently leaves them open to the knowledge of the company, his negligence becomes its negligence, and it would be liable for injury sustained by a third party. There seems to us to be a degree of inconsistency in imposing the general duty to provide a private crossing, which in many instances requires gates or bars, and at the same time holding the company liable for the negligence of the person for whose benefit the bars or gates are furnished, and in requiring it, at its peril, to discontinue the crossing, if such person negligently permits the gates or bars to remain open. Under such circumstances, if cattle guards and an open crossing could properly be employed, it might become the duty of the company, in order to avoid liability to third parties, to provide such open crossing. But when such open crossings cannot be provided, the company can be required to do no more than exercise reasonable diligence and care to keep the bars and gates closed. *Aylesworth v. C., R. I. & P. R R. Co.*, 30 Iowa, 459. And if, notwithstanding this diligence and care, a gate is left open, and injury results, the loss must be borne by the party whose negligence occasioned it. *Russell v. Handy*, 20 Iowa, 219.

If a railroad company, at a point where it is under no obligation to provide a private crossing, furnishes one and puts in gates and bars for the accommodation of a party, out of mere favor, and such party negligently and repeatedly leaves the gates or bars open, of which the company has knowledge, there would be great justice and propriety, under such circumstances, in requiring it either to discontinue the crossing, or to stand responsible for the consequences of the negligence of the party for whom the crossing was made. For the company ought not to be allowed voluntarily and without necessity, to impair the security of a fence, or, out of favor to one person, to imperil the property and lives of others. But the

instructions given do not contain this qualification. We are satisfied of the incorrectness of the general doctrine which they announce.

REVERSED.