HENDERSON v. THE C., R. I. & P. R. Co.

1. **Instruction**: WHEN NOT PERTINENT TO EVIDENCE. It is erroneous to give to the jury instructions which are not applicable to the evidence, even though they may be abstractly correct.

2. **Railroads**: PRIVATE CROSSING. The conduct of a land-owner, through whose property a railway passes, in forcibly opening the gates at a crossing which has been closed by the company, sufficiently indicates his requirement that the company should comply with the provisions of the Revision, section 1329.

3. ———: ———: NEGLIGENCE. Where a railway company has provided a private crossing and supplied the necessary gates, it is held only to the exercise of reasonable care to keep them closed; and it is not responsible for an injury sustained by a third party, which is occasioned by the negligence of him for whose benefit the crossing is provided.

*Appeal from Polk District Court.*

SATURDAY, JUNE 17.

THIS is an action for the recovery of double the value of a mare killed on defendant's road. There was a jury trial, and a verdict and judgment for $269.91. Defendant appeals.

This case was before us on a former appeal (see 39 Iowa, 220), and the evidence is now the same as then. The facts are stated in the opinion.

*Wright, Gatch & Wright,* for appellant.

*Phillips, Goode & Phillips,* for appellee.

DAY, J.—I.  The Chicago, Rock Island & Pacific Railroad runs east and west past, and immediately south of, the residence of one Lysander Harvey.  The Des Moines Valley Railroad runs about seventy feet from, south of, and parallel to, the Chicago, Rock Island & Pacific.  The public highway extends along and immediately south of these railroads and crosses them from one hundred and twenty-five to one hundred and fifty yards west of Harvey's house.  There is a fence on the north of, one on the south of, and one between these two railroads.  An open lane extends from Harvey's house to the public crossing.  Through this lane Harvey can reach the public crossing by traveling from one hundred and twenty-five to one hundred and fifty yards west.  Harvey's house is situated north of the railroads and his farm is south of them.  He has a private crossing right in front of and about forty steps from his house, over both railroads, gates for that purpose being placed in the fences.  The evidence tended to show that the gate immediately south of Harvey's house was almost always open, and that the animal in question reached the railroad through one of these gates.  It further appears from the evidence that there was a private crossing at this place when the road was being built, and that the gates were put in at the time the fence was built.

The foregoing statement shows that it was necessary for Harvey to cross the railroads to reach his farm from his house. The Revision, section 1329, provides that " when any person owns land on both sides of any railroad, the corporation owning such railroad shall, when required so to do, make and keep in good repair one causeway or other adequate means of crossing the same."  Recognizing this obligation, the court instructed the jury as follows:

" 5.  When any person owns land on both sides of a railroad, it is the duty of the corporation owning such railroad to make and keep in good repair one causeway, or adequate

means of crossing the same, when required so to do, but this is only intended to give the land-owner access to land belonging to him, or to a public highway with which communication has been cut off by the railroad, and in this case, should you find that Harvey had other sufficiently convenient and ample means of access to his lands, and to the public highway without the private crossing, and that Harvey did not require defendant to make the private crossing, then defendant was under no legal obligation to make the same, and the making of it was a merely voluntary act on defendant's part."

Abstractly considered, this is, perhaps, not objectionable. But there is no evidence upon which to predicate it. The 1. INSTRUC- testimony shows that Harvey had a private cross-TION: perti-nency. ing at the place in question before the fence was built. When the fence was erected gates were constructed to enable him to reach this crossing. Afterward, the gates being frequently left open, the company nailed up the gates, and tore up the crossing. Harvey cut down the gates, and declared his intention to cut them down as fast as the com-2. RAILROADS: pany nailed them up. The result was that the private cross-ing. crossing was restored, and the gates were left in a condition that they could be opened. This conduct of Harvey's was as positive and unequivocal a requirement that the crossing should be continued as could have been made. There is an entire absence of evidence that the crossing was not required by Harvey. It was, therefore, error to submit to the jury the legal consequences of constructing a private crossing without being required to do so.

II.    The court further instructed the jury as follows:

" 6.    If, under the last instruction, you find that defendant was under no legal obligation to make the private crossing and yet did so, and put in the gates, and if you further find that the crossing and gates were voluntarily put there by defendant out of mere favor to Harvey and for his accommodation, and that the gates had, prior to the alleged killing of plaintiff's mare, been through negligence so constantly and repeatedly left open as to form no real protection to stock, that is, no real barrier to stock going on to the railroad, and

that defendant knew thereof, or by the exercise of ordinary care and watchfulness could have known thereof, then defendant should have discontinued the crossing and closed up the gates,,and, if it failed to do so, and plaintiff's mare was killed by reason thereof, and without the negligence or willful act of plaintiff, defendant is responsible therefor."

It was error to give this instruction, for the reason before considered. There was no evidence which, under the last instruction, would enable the jury to find that defendant was under no legal obligation to make the private crossing.

III. The court gave the following instruction:

"12. If you believe, from the evidence, that on the evening preceding the alleged killing of plaintiff's mare the gates, at the so-called Harvey's crossing, were closed, and that the mare was killed the succeeding night or morning, before defendant's employes could reasonably get out over the line to examine the gates, then the fact that the gates had been before occasionally or frequently open would make no difference in the case, unless they had been so frequently, repeatedly and constantly left open, when not in use, and for such a length of time that defendant in the exercise of ordinary care and watchfulness must have known they were open or that in all reasonable probability they would be open."

This instruction is general, and it applies as well to a crossing which the company is under legal obligation to erect as to one constructed without legal obligation, out of mere favor.

The effect of this instruction is to hold the company responsible, notwithstanding the gates were closed in the evening 3. ——: ——: and the animal was killed the next morning before negligence. defendant's employes could reasonably get out over the line to examine the gates, if the gates had been so frequently and for so long a time open that defendant, in the exercise of ordinary case, must have known that, in all probability, they would be left open during the night. In other words, if the company knew that Harvey or other persons were in the constant or usual habit of leaving the gates open, then the company must station a watchman at the gates and

see that they are kept closed, or be responsible for the damages which ensue.

This construction of the law is in conflict with the rule which we announced upon a former appeal of this case. 39 Iowa, 220. We then held that, when a railroad company has provided a private crossing, and supplied the necessary gates, it is held only to the exercise of reasonable diligence and care to keep them closed; and it is not responsible for any injury sustained by a third party, which is occasioned by the negligence of him for whose benefit the crossing is provided.

This rule we believe to be the necessary and logical result of the provisions of the statute making railroads liable for damages resulting from a failure to fence, and, at the same time requiring them to construct and keep in repair an adequate means of crossing the road, for a person owning land on both sides of it.

For the errors discussed the judgment is

REVERSED.