No. 18,885.

T. B. Martin, *Appellee*, v. The Atchison, Topeka and Santa Fe Railway Company, *Appellant*.

SYLLABUS BY THE COURT.

1. Negligence—*Cattle Guards—Filled with Snow and Ice.* It is the duty of a railway company to exercise reasonable or ordinary care to keep its cattle guards from becoming so filled with snow and ice as to make it possible for animals to cross them, and for negligent failure in this respect the company is liable for injuries to animals thus getting upon its right of way.

2. Same—*Negligence Question of Fact for Jury.* Where a railway company has erected and maintained good and lawful fences and sufficient cattle guards to prevent stock from getting upon its right of way, the question whether it was negligent in failing to keep its cattle guards from becoming so filled with snow and ice as to make it possible for animals to cross the same depends upon the facts and circumstances, and is a question for the jury to determine under proper instructions.

3. Same—*Plaintiff Not Entitled to Attorney's Fee.* In an action to recover for animals injured on the right of way, where the facts are as stated in the preceding paragraph, and plaintiff recovers on the sole ground of the negligence of the railway

company in failing to remove snow and ice from its cattle guards, the plaintiff is not entitled to an allowance for attorney's fees.

Appeal from Hamilton district court; GEORGE J. DOWNER, judge. Opinion filed June 6, 1914. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *George Getty,* of Syracuse, for the appellant.

*U. T. Tapscott,* of Syracuse, and *Edgar Foster,* of Garden City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The railway company appeals from a judgment in plaintiff's favor for $400 damages and $100 attorney's fees. The action was to recover the value of stock killed by one of the trains of the defendant. The stock escaped from plaintiff's enclosure, went upon the highway and entered the defendant's right of way over a cattle guard at a highway crossing. They were killed by a passenger train on January 27, 1912, at four-thirty in the afternoon. There was about six inches of snow on the ground. The petition alleged that the defendant knowingly and negligently permitted its cattle guards at this place to become and remain in bad condition; that there was not a sufficient fence or cattle guard where the stock got on the right of way to prevent stock from crossing from the public highway to the right of way. The jury made a number of special findings, among which are that the width between the wing fences and between the cattle guards where the public road in question crosses the defendant's railway was fifty-nine feet and six inches; that two mares and one mule belonging to plaintiff crossed over the cattle guards west of the highway. They find that the railway of the defendant was enclosed with a good and lawful fence at the place where the animals crossed; that the cattle guards were not defective but

were allowed to become obstructed by snow, and that the defendant was negligent in not keeping the guards clear of snow. These findings present the issue in the case which we regard as controlling. The railway company demurred to the evidence, and after the verdict moved for judgment in its favor on the findings of the jury, and now contends that the court erred in overruling the demurrer and the motion for judgment.

The defendant relies first upon a decision in the recent case of *Wood v. Railroad Co.*, 88 Kan. 477, 129 Pac. 193, in which the court said:

"Section 5 of the stock law of 1874 (Gen. Stat. 1909, § 7005) excepts from the operation of that act any railway company whose road is inclosed with a good and lawful fence to prevent animals from being on the road. As it is impracticable if not impossible to fence across the railroad track it has frequently been held that the inclosure of the track is complete when the fences on either side are connected at proper places with wings and cattle guards sufficient to prevent the animals from going upon the track, but in such instances under that statute a cattle guard is deemed a portion of the fence and the failure to provide a sufficient guard is equivalent to the failure to provide a sufficient fence." (p. 480.)

Their contention is that as a cattle guard is deemed a portion of the fence a railroad company is under no more obligation to remove snow from a cattle guard than from both sides of fences, and that the statute has been complied with when a cattle guard, wing fences and fences in proper condition are provided. They insist that to place a further burden on the defendant requires an "ingenious and erroneous interpretation of the legislative intent." The argument is that when snow extends any considerable distance along the right of way it would require a great number of additional employees to keep cattle guards clear, and that this would impose an unfair and unreasonable burden upon the railway company, and that the value of the services compared to the cost neces-

sarily imposed would be grossly incommensurate with the paramount duty which the company owes to the public; that usually it would require a waste of energy or money to require the removal of snow from all cattle guards in order "to provide a contingent benefit for the trespassing cattle of negligent and careless owners." A case directly in point, which is relied upon, is *Blais v. Minneapolis & St. Louis Ry. Co.,* 34 Minn. 57, 24 N. W. 558, where it was said:

"Reasonable care and diligence do not require a railway company, unless under exceptional and extraordinary circumstances, to remove the natural accumulations of snow and ice from cattle-guards." (Syl.)

The doctrine was followed and applied in *Stacey v. Winona & St. Peter R. Co.,* 42 Minn. 158, 43 N. W. 905, where it was held that it was error to refuse to charge the jury, as requested, that the railway company was not negligent in failing to remove snow and ice from cattle guards. Another case cited is *Wait v. Railroad Company,* 61 Vt. 268, 17 Atl. 284, where it was said that "the statute . . . can not mean that a guard must be so built that under no circumstances could an animal cross it, but under all ordinary circumstances is it sufficient to prevent cattle and other animals from getting upon the track." (p. 280.)

Counsel for plaintiff cite no cases to the contrary, but they argue that this court should consider the different conditions existing in states like Minnesota and Vermont and those which prevail in western Kansas, where it is said that very little snow falls and cattle may graze through the entire season. It is insisted that the burden of removing what little snow might fall on cattle guards in western Kansas would not be great; that a six-inch snow might fall in that section twice in three years. But if snow seldom falls in that locality sufficient to block the cattle guards, that might be a circumstance for the consideration of a jury in determining whether it was reasonable to expect a railway company to keep enough men in its employ to re-

move it when it should fall.  It happens occasionally, even in this state, that snow falls or drifts up to a level with an ordinary fence, or to such an extent that the fence, though a lawful one, furnishes no obstruction to stock.

Owing to the danger to persons and property being transported on the railway from collisions of trains with trespassing animals, as well as danger to the animals themselves, the statute makes the railway company liable irrespective of any negligence on the part of the company, provided the stock gets upon the right of way at a place where the road is unfenced and "where it can and ought to be fenced." (*Hopkins, Warden, v. K. P. Rly. Co.,* 18 Kan. 462, 465.) The statute contains a provision that it shall not apply to any railway company whose road is enclosed with a good and lawful fence to prevent animals from coming on the right of way. (Gen. Stat. 1909, § 7005.) Here the railway company had erected what the jury find to be a good and lawful fence, and the judgment can only be upheld upon the theory that the defendant was negligent as a matter of law in failing to remove the snow from its cattle guards.

A large number of "snow and ice" cases from courts of various states may be found cited in a note in 36 L. R. A., n. s., 997, where it is said that the weight of authority holds it to be the duty of a railway company to keep its cattle guards in repair, and that this imposes upon it the duty to exercise reasonable or ordinary care to keep its cattle guards from becoming so filled with snow and ice as to make it possible for animals to cross them, and for negligent failure in this regard the company is liable for injury to animals thus crossing them.  The case at bar seems to have been tried upon the theory that the mere fact that a cattle guard is filled with ice and snow sufficient to permit cattle to cross them amounts to negligence in law, for which the company is liable if by reason thereof animals get upon the track and are injured.  This is not the law.

Whether a railway company was negligent in failing to remove the snow and ice depends upon the facts and circumstances disclosed by the evidence in each particular case, and is a question for the jury to determine under proper instructions.

In *Grahlman v. The Chicago, St. P. & K. C. Ry. Co.*, 78 Iowa, 564, 43 N. W. 529, 5 L. R. A. 813, it was held, in substance, that the company is not required to keep its cattle guards free from snow regardless of circumstances, but must use ordinary care and diligence in this respect. The Minnesota court, in a recent case, seems to have modified the doctrine announced in *Blais v. Minneapolis & St. Louis Ry. Co.*, supra, upon which the defendant relies, and while that court adheres to the rule that railway companies are not required under all conditions to keep cattle guards free from snow and ice, it holds that whether they must in the exercise of reasonable care do so depends on the circumstances of each particular case. In *Yates v. Chicago, St. P. M. & O. R. Co.*, 115 Minn. 496, 132 N. W. 994, it was said in the syllabus:

"Whether a railway company must, in the exercise of reasonable care, keep its cattle guards clear of ice and snow depends on the location and elevation of the tracks, the character of the weather, the prevalence of storms, the use of the adjacent crossings or vicinity for the passage of animals, and all facts and circumstances relevant to the matter."

The rule seems to be supported by reason and authority. (*Schuyler v. Fitchburg R. Co.*, 65 Hun. 622, 47 N. Y. S. R. 741, 20 N. Y. Supp. 287.) In *Grahlman v. The Chicago, St. P. & K. C. Ry. Co.*, 78 Iowa, 564, 43 N. W. 529, an instruction was upheld in substance as follows:

"That the law did not require defendant to keep its cattle-guards free from snow, regardless of circumstances, but did require it to use ordinary care and diligence to do so; that it was not required to excavate the snow from the cattle-guard unless it had notice that it was filled, or might have had notice by the use of ordi-

nary care in looking after its road, and that it would have a reasonable time, after notice, to do so; also, that the law did not require defendant's servants to subject themselves to extreme exposure in excavating the snow." (Syl. ¶ 1.)

In one of the cases cited by the defendant, *Wait v. Railroad Company*, 61 Vt. 268, 17 Atl. 284, the court applied the same rule and held that the question of negligence was for the jury. In *I. B. & W. Ry. Co. v. Drum*, 21 Ill. App. 331, it was held that a railway company is not liable for the consequences of storms which fill the cattle guards with snow and ice until a reasonable time has elapsed thereafter in which to remove the same.

It is contended that the court should have decided the question whether the herd law was in force. The court submitted it to the jury, and they made a finding that the law was not in force. Inasmuch as the jury determined the fact correctly, it is of no consequence whether it should have been submitted to them or decided by the court. The defendant's contention that chapter 175 of the Laws of 1879 repeals by implication chapter 128 of the Laws of 1874 can not be sustained. The law of 1874 gives the county board authority, in its discretion, to repeal the herd law or vacate it, while the law of 1879 authorizes them to suspend its operation. The two statutes are not inconsistent. The various provisions of the two are to be considered together, and constitute the herd law of the state. (*The State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606; *The State v. Jepson*, 76 Kan. 644, 92 Pac. 600.) The fact that the petition presented to the board of county commissioners erroneously stated the statute under which the herd law had been originally adopted is not important. It otherwise sufficiently described the original order, and upon the petition the board had jurisdiction to vacate the order.

In the present case the court instructed the jury, in substance, that if they found from the evidence that de-

fendant failed to construct cattle guards which were reasonably sufficient to prevent animals from coming upon its right of way, or that defendant permitted its cattle guards to become obstructed so as to enable animals to pass over them, and that the plaintiff's stock crossed over the same and were killed, the verdict should be for the plaintiff. This, as we have seen, was erroneous, and a new trial must be ordered upon the issue of whether the defendant's failure to remove the snow and ice from the cattle guards in question was, under all the facts and circumstances, negligence. Two questions may be regarded as finally determined: one against the defendant, namely, that the herd law was not in force in the county; and the other in favor of the defendant, that it had erected and maintained a lawful fence and sufficient cattle guards at the highway where the animals entered the right of way, and these issues are not to be retried. Plaintiff's cause of action, therefore, resting not upon the statute but upon the alleged negligence of the defendant, he would not in any event be entitled to an allowance for attorney's fees. The defendant filed a motion for a new trial and also one for judgment on the special findings. The court properly overruled the last motion, but should have sustained the former.

The judgment will be reversed and the cause remanded for a new trial upon the issue of negligence.

BURCH, J. (dissenting) : I fear my brother physicians have merely thrown a case of noncompliance with a statute into negligence, and then have prescribed for the negligence.

The trial court stated the plaintiff's cause of action to the jury as follows:

"8. You are instructed that it is admitted by plaintiff that the fences of defendant along its right-of-way, at and in the vicinity where animals in question were killed, were not out of repair, and that his only contention is that the cattle-guards of defendant were insuffi-

Martin v. Railway Co.

cient and did not prevent the animals in question, belonging to plaintiff, from crossing from the public road over into the right-of-way of defendant."

The statute applicable to such a case was given and interpreted in the following instructions:

"3. Section 7001, of the General Statutes of 1909, provide that:

" 'Every railway company or corporation in this state, and every assignee or lessee of such company or corporation, shall be liable to pay the owner the full value of each and every animal killed, and all damages to each and every animal wounded by the engine or cars on such railway or in any other manner whatever in operating such railway, irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railway company or corporation, or the assignee or lessee thereof, or not.'

"Section 7005 of the General Statutes of 1909, provides:

" 'This act shall not apply to any railway company or corporation, or the assignee or lessee thereof, whose road is inclosed with a good and lawful fence to prevent such animals from being on such road.'

"4. Under the sections above quoted it is the duty of the railroad company to place proper cattle-guards on the sides of the public highways on its right-of-way to prevent animals from going upon its right-of-way, and if you find from the evidence that the defendant failed to construct cattle-guards at the points in question, which were reasonably sufficient to prevent animals from wandering on its right-of-way, or that defendant permitted said cattle-guards to become obstructed so as to enable the passage of animals over same, and that horses and mules of plaintiff crossed over the cattle-guard in question, on the right-of-way of defendant, and were killed by a passing train belonging to defendant, defendant is liable for the full value of such horses and mule as went over the cattle-guard in question and on the right-of-way of defendant, irrespective of the fact as to whether such killing was caused by the negligence of the defendant or not, and the fact that the plaintiff might have been guilty of contributory negligence is no defense, and your verdict should be for the plaintiff.

"5. A cattle-guard that is only apparently good, or that will only apparently prevent animals from going on the right-of-way will not excuse a railroad company from liability to the owner of the animals which pass over or through such cattle-guards and upon the right-of-way, and are killed or injured by a passing train."

There was no contention that the snow fall which obstructed the cattle guard was excessive or unusual or not naturally to be anticipated, and consequently the instructions were, in my opinion, correct and applicable to the facts.

The jury returned, among others, the following special findings of fact:

"12. Was the railway of the defendant enclosed with a good, sufficient and lawful fence at or near the place where the animals were struck by the engine of No. 12? Ans. Yes; but the cattle-guard was allowed to become obstructed on the day of damage.

"14. State if any proper cattle-guard would have prevented plaintiff's stock from getting onto the right-of-way at the place in question. Ans. Yes.

"15. If you find that the cattle-guards in question were defective, then state in what respect they were so defective. Ans. They were not defective, but were allowed to become obstructed by snow.

"16. If you find that the defendant Railway Company, its officers, agents or employes, were negligent, then state in what respect they were negligent. Ans. By not keeping the guards clear of snow."

Reading finding No. 14 with the others, and reading all the findings in the light of the instructions and with the general verdict, it seems to me the jury meant to say that while the cattle guards answered to that name in all respects and so were not defective, they did not prevent stock from getting upon the defendant's right of way when allowed to become obstructed by snow. They were summer-season cattle guards, not defective at all, but if allowed to become obstructed with snow were not proper or sufficient for the purpose of preventing stock from going upon the defendant's tracks.

Harmony is the imperative word in cases of this kind, and considering the findings in the manner suggested, the cattle-guard did not properly complete the fence after the snow had fallen, and a violation of the statute was established.

Regarding the case as one involving negligence instead of compliance with the statute, the opinion of the court is fine.

SMITH, J. (dissenting) : I dissent on the ground that the appellee alleged negligence on the part of the railroad company as its ground of recovery, and that there is no evidence showing how long before the cattle passed over the cattle guard it was that the snow fell. The snow may have fallen within an hour before the cattle passed over the cattle guard, and in such case it would require an extraordinary degree of diligence to hold that the railroad company must have removed the snow and ice from the cattle guard within that time.   I think there is no showing of negligence.