No. 23,923.

W. P. Toothaker, *Appellant,* v. Walker D. Hines, as Director-general of Railroads (James C. Davis, as agent, etc., substituted, *Appellee*).

SYLLABUS BY THE COURT.

1. Live Stock—*Killed by Railroad While Under Government Control—Informal Substitution of Parties Defendant—Jurisdiction—Appearance.* In an action for damages for stock killing against the agent appointed by the president under section 206 of the federal transportation act of 1920, judgment on the pleadings having been rendered in favor of the defendant; and one month later the person filling the position of such agent having resigned and a new appointment having been made; and within four months thereafter service of a notice of appeal directed to the attorneys of the former incumbent, described as such agent, having been acknowledged; and briefs on the merits having been subsequently filed on both sides, no objection being

made on jurisdictional grounds; it is held that an informal but actual substitution of the new agent within the provisions of the federal statute (ch. 121, 30 Stat. 822) resulted from the acknowledgment of service of the notice of appeal, confirmed by the filing of a brief on the merits.

2. LIVE STOCK—*Railroad Fence Covered with Snow—Snow Must Be Cleared Within Reasonable Time.* Under the statute imposing liability upon railroad companies for any animal killed by their engines, but providing that it shall not apply where the road is enclosed with a lawful fence, a company is liable for the killing of cattle which get upon the track by reason of a fence becoming an insufficient barrier through being covered by snow, after that condition has been permitted for so long a period as to show negligence.

3. SAME—*Fence Covered with Snow—Duty of Railroad Company.* Where the fence maintained by a railroad company is situated wholly upon its own land or right of way its obligation extends to the exercise of reasonable diligence to remove the snow on both sides of the fence sufficiently to prevent its being rendered ineffective as a barrier, although the land or right of way belonging to the company outside of the fence is occupied by the adjoining owner as a pasture without lease or agreement with the company.

Appeal from Sheridan district court; CHARLES I. SPARKS, judge. Opinion filed December 9, 1922. Reversed.

*W. L. Sayers,* and *J. S. Parker,* both of Hill City, for the appellant.

*R. W. Blair, T. M. Lillard,* and *O. B. Eidson,* all of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: On February 20, 1920, W. P. Toothaker sued Walker D. Hines, director-general of railroads, for the value of a steer killed by an engine on the Union Pacific railroad. At the trial, on February 28, 1921, John Barton Payne, the agent appointed by the president under section 206 of the federal transportation act of 1920 (41 U. S. Stat. 461), was substituted as defendant. A jury was impaneled, after which an objection to the introduction of evidence was sustained on the ground that the petition did not state a cause of action. Judgment was thereupon rendered in favor of the defendant, and the plaintiff appealed. The case is by this court entitled as above in accordance with the practice of naming the parties as they appeared in the original petition and adding any others who are either appellants or appellees.

Briefs on each side were filed in this court, and when the case was called for oral argument, on October 31, 1922, an objection to entertaining the appeal was raised on the ground that James C. Davis had succeeded John Barton Payne on March 28, 1921, and as no

substitution had been made within a year thereafter jurisdiction had been lost. A brief in support of the objection has subsequently been filed.

The federal statute provides:

"That no suit, action, or other proceeding lawfully commenced by or against the head of any Department or Bureau or other officer of the United States in his official capacity, or in relation to the discharge of his official duties, shall abate by reason of his death, or the expiration of his term of office, or his retirement, or resignation, or removal from office, but, in such event, the court, on motion or supplemental petition filed, at any time within twelve months thereafter, showing a necessity for the survival thereof to obtain a settlement of the questions involved, may allow the same to be maintained by or against his successor in office, and the Court may make such order as shall be equitable for the payment of costs." (Act of February 8, 1899, ch. 121, 30 U. S. Stat. 822.)

Under this statute it is held that if the successor is not substituted within the time named no substitution can be made, and that without it no review of the judgment can be had. (*LeCrone v. McAdoo*, 253 U. S. 217—not a railroad case, however.)

Prior to this enactment it had been held that an action against a public officer as such abated by his death or retirement, except in the case of a continuing body, or perhaps of an officer acting only in a representative capacity. (*Thompson v. United States*, 103 U. S. 480; *Murphy v. Utter*, 186 U. S. 95.) A reason given for this holding was that in the cases in which it was made the relation of the officer to the matter was personal. (*United States v. Boutwell*, 84 U. S. 604; see, also, *Richardson v. McChesney*, 218 U. S. 487; *Pullman Co. v. Croom*, 231 U. S. 571.) The statute was passed in response to a suggestion of the court as to its necessity in view of the holding referred to. (*U. S. ex rel. Bernardin, v. Butterworth*, 169 U. S. 600, 605.) Considered in the light of the history and obvious purpose of the statute, it might be argued that it does not apply to the present case, where the defendant acts in a purely representative capacity. That question, however, seems to be foreclosed by a recent decision in which the statute appears to have been applied in similar circumstances, although without an opinion beyond a reference to the statute and to *LeCrone v. McAdoo*, supra. (*John Barton, Agt., etc., v. Industrial Board of Illinois*, 42 S. C. R. 462.)

In two recent cases in this court, in situations somewhat similar to those here presented, formal substitution was held unnecessary, no reference however being made in the opinions to the federal statute above quoted or the decisions under it. (*Helm v. Railway Co.*,

109 Kan. 57, 198 Pac. 190; *Jameson v. Railway Co.*, 111 Kan. 670, 208 Pac. 560.) In the one first cited the judgment appealed from was rendered while government control was in force, and the substitution of the agent for the director-general was specifically provided for without a time limitation. (41 U. S. Stat. 462, ch. 91, § 206, subdiv. *d.*) A change of agents, however, took place between the judgment in the district court and the hearing on appeal. In the present case, on October 24, 1922, a brief upon the merits was filed by attorneys describing themselves as attorneys for the appellee, the brief bearing the title—"*W. P. Toothaker, Appellant, vs. Walker D. Hines, Director General of Railroads, Appellee.*" They were not appearing for Walker D. Hines or for John Barton Payne personally, for neither of these gentlemen personally ever had anything to do with the matter. They were not appearing for either of them as an officer of the government, for the official relation of each of them to the proceeding had ceased. No suggestion is made that the attorneys were not in fact representing the federal railroad agent, whatever individual might at the time be holding that position—in this instance, James C. Davis. The use of the wrong name in describing him is of no more practical importance than if the right name had been misspelled. We regard the appearance of the attorneys, and their presentation of the case on the merits as made in behalf of the agent then in office. There was no occasion for pleading the fact of a change of agents, for judicial notice is taken of it. (*Helm v. Railway Co.*, 109 Kan. 57, 198 Pac. 190.) All that was necessary was that the new incumbent of the office should be brought into the case, and this was done by his appearance through his attorneys, which we hold resulted in an informal but actual substitution such as to preserve the jurisdiction of the court, the appeal under the present Kansas code being a part of the same proceeding with the original case.

It may be, however, that considered alone such appearance could not effect a valid substitution because not made within one year after the change in federal agents, inasmuch as except for the act permitting it a substitution could not be accomplished even by consent. (*U. S. ex rel., Bernardin v. Butterworth*, 169 U. S. 600.) This feature of the matter is affected by the fact that on July 6, 1921, less than a year after the change, a notice of appeal addressed to the attorneys "for defendant John Barton Payne director-general of railroads as agent of the president," was served, service being ac-

knowledged by one of them. Upon the reasoning already indicated we hold this to have been an acknowledgment of service upon the actual appellee, the then agent of the government, effecting a substitution at that time, confirmed by the subsequent appearance to the merits, recognizing the validity of the appeal. If the attorney to whom the notice was presented had declined to acknowledge service no doubt a formal substitution would have been had.

2. The petition alleged in substance that the steer got upon the track at a point where the gate of a sufficient fence constructed by the railroad company was so covered by a snowdrift that the animal was enabled to walk over it without hindrance; and that this condition had existed for three weeks with the knowledge of the defendant's agents and without effort on their part to correct it.

The defendant argues that the petition does not allege negligence. It does not use that word, but under the liberal interpretation to which it is entitled when attacked only by an objection to the introduction of evidence the allegation that the snow had been permitted to cover the gate for three weeks without an effort to remove it must be held to imply that the exercise of reasonable diligence would have resulted in its removal within that period.

It is also argued that inasmuch as the obligation rested upon the plaintiff to keep the gate closed (*Plummer v. Railway Co.*, 86 Kan. 744, 121 Pac. 906), it was his duty also to keep it sufficiently free from snow to act as a barrier against the escape of his cattle. We do not regard the conclusion as sound. The accumulation of the snow is not shown to have been due to any mismanagement of the gate, or to its existence as a gate as distinguished from any other part of the fence.

The statute in terms makes a railroad company liable for all cattle killed by the operation of its trains, irrespective of its negligence (Gen. Stat. 1915, § 8557), but provides that the act shall not apply where its road is enclosed with a lawful fence (§ 8561). The resulting obligation to furnish a fence is quite analogous to the duty to maintain cattle guards. It has been determined that the railroad company is required to exercise reasonable diligence to keep its cattle guards free from such accumulation of snow and ice as to render them ineffective. (*Martin v. Railway Co.*, 92 Kan. 595, 141 Pac. 599.) Inasmuch as the purpose of the fence is to turn cattle we think a parity of reasoning requires us to hold that the obligation to maintain it includes the duty of seeing that it continues to be

effective for that purpose, and if cattle get on the track by reason of an accumulation of snow covering the fence, where that condition has been permitted to exist for a longer period than the exercise of reasonable diligence would allow, the company is liable.

3. It is suggested that at all events the company was under no duty to clear away the snow on the side of the fence away from the track. The petition, however, alleges that the fence and gate is wholly upon the land and right of way of the company, being but 50 feet from the track; that an enclosure constituting the plaintiff's pasture included the strip of the company's land outside of the fence, 50 to 100 feet in width, which for several years the plaintiff had so used without any lease or other agreement between him and the company. As the company has elected to place the fence wholly on its own land we think its obligation to keep it effective requires it to use reasonable diligence to remove the snow on either side sufficiently to insure this. Although the plaintiff might be presumed from his occupancy of the strip with the consent of the owner to be a tenant at will (Gen. Stat. 1915, § 5956), the company is not shown to have relinquished the right to occupy it so far as necessary for the operation of the road.

The judgment is reversed, and the cause is remanded for further proceedings.