No. 29,936.

J. F. KRING, *Appellee,* v. A. T. WEST et al., *Appellants.*

(300 Pac. 1080.)

Opinion filed July 3, 1931.

*Sullivan Lomax,* of Cherryvale, for the appellants.
*Claud J. Bryant,* of Independence, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to enjoin obstruction of a public highway. Plaintiff prevailed, and defendants appeal.

Lying north of Cherryvale are two parcels of land which, as the result of a survey made in 1918, are known as tract 6 and tract 7. Tract 6 is east of tract 7, which extends westward to the right of way of the Santa Fe railway. Tract 6 is owned by Kring, and tract 7 is owned by West. The two tracts are bounded on the south by a section line, along which is a section-line road. Opposite the divid-

ing line between the two tracts, and beginning at the section-line road, is a highway extending southward to Cherryvale, known as North Carson street.

In 1884 tract 6 was platted as an addition to Cherryvale, and contained 110 lots. There is nothing in the record before the court to show whether there were streets or alleys. Two or three residences and a store building were erected on lots in the addition. The store building was on lots near the northwest corner of the tract. In 1892 Kring purchased the land, and afterwards procured vacation of the plat. Soon after Kring purchased, and in the fall of 1892, he converted the store building into a slaughterhouse, erected scales, and erected facilities for keeping and feeding stock. Ever since the slaughterhouse was established Kring has conducted a slaughterhouse business there. He also bought grain, which was delivered to him there and stored in bins and cribs.

A long time before Kring purchased there was an unimproved traveled way along the east side of tract 7, leading down to the section-line road at North Carson street. In 1893 Kring and his neighbors graded this road from the slaughterhouse down to the section line and to the Frisco depot, a few blocks west of North Carson street. The work done was donation work. The next year a grader was used on the road, and the ditches then cut are substantially in the same place as the ditches of the way in controversy. After that cinders were put on the road, and it was oiled. Since 1893 the road has been worked and kept up, so it has been a good road.

The original road was for people who bought lots in the addition. Since Kring established his slaughterhouse business the general public has used the road to take stock of various kinds and grain of various kinds to Kring, and then go out. The public has also used the scales. Kring has had a tenant on tract 6, and he has used the road, and persons would use it to go to see Kring and the tenant, and to go out.

In 1929 West purchased tract 7, and later barricaded the road. The prayer of the petition was that West be enjoined from obstructing the highway or interfering with plaintiff in the use of it as a highway. The court made a general finding that plaintiff should have judgment as prayed for in the petition, and rendered judgment accordingly.

In the opinion in the case of *Shanks v. Robertson*, 101 Kan. 463, 168 Pac. 316, the following from 37 Cyc. 21 (29 C. J. 373) was quoted and applied:

"To establish a highway by prescription the land in question must have been used by the public with the actual or implied knowledge of the land-owner, adversely under claim or color of right, and not merely by the owner's permission, and continuously and uninterruptedly, for the period required to bar an action for the recovery of possession of land or otherwise prescribed by statute. When these conditions are present a highway exists by prescription; otherwise not." (p. 465.)

It would serve no useful purpose to recite or discuss the evidence. That favorable to plaintiff, which is all that is open to present consideration, met all these tests of a highway by prescription.

Taking possession of the old road, improvement of it, subsequent work done to maintain the road, and use of it by the public, all open, visible and notorious for more than fifteen years, were ample to raise an implication of knowledge on the part of West's predecessor in interest that the road was appropriated for and was maintained and used as a public highway; and the continued maintenance and public use of the highway for more than another period of fifteen years made it a public highway before West purchased. Since it was a public highway, which West could see was on the land when he purchased, he was not privileged to obstruct it. Besides that, the deed he took, and which was admitted by his answer, contained the following after the description:

"Excepting the highway on the east side of said tract, and included in said description."

In 1903 Kring gave an oil and gas lease of tract 6 to E. R. Stone, who then owned tract 7. The lease contained the following:

"In consideration for the above lease the first parties are to have the right to a private road commencing at a point 630 feet east from center line of Santa Fe R. R. on south line of section 4, township 32, range 17, running north parallel to said R. R. 80 rods, this road to be used in common by both parties."

Kring contended the lease constituted recognition of the highway. The lease was for oil and gas purposes. It did not mention width of the way, and no way was ever established pursuant to the lease. West contended the lease did not recognize the highway. There is nothing to indicate the court regarded the matter as important.

When the lease was given, there was some conversation about the road leading to town. Stone said to Kring, "You have already got

a road," and Stone said he wanted to tie into it. The testimony was objected to. There is nothing to show that West complained of it in his motion for a new trial, and he does not complain of it in his brief. The testimony was competent to show Stone knew of the existing highway in 1903.

In 1904 Kring leased Stone's land, and used it and paid rent for it until about the time West purchased. West says Kring, as Stone's tenant, established the road. The road had been established for more than ten years before the tenancy commenced.

West says the neighbors' grading was done on the road from the section line to town, and West goes outside the record in discussing the subject. That road was graded, but the testimony was clear that Kring and the neighbors also graded the road in controversy.

Kring put a gate across the south end of the road. The testimony was conflicting about when this was done and how long the gate was there. There was testimony that the gate was put in some eighteen years before the trial, that it was put in to keep stock out, that it was kept closed but a short time, and then was left open and rotted down, and that while it was there, highway users opened it to go in and out.

West cites the case of *State v. Horn,* 35 Kan. 717, 12 Pac. 148. The case involved an old Indian-trail road over vacant land, which had been granted by act of congress to a railway company. In the opinion it was said that in order to start prescriptive right it was necessary that the public, by its constituted authorities, should have taken actual possession of the ground as a highway, and used it as a public highway. The opinion discloses, however, that the use of the road by individual travelers was not of that adverse character necessary to indicate implied dedication or initiate prescriptive right. In that situation action by public authority would be necessary. The present case is governed by the decision in *Shanks v. Robertson,* 101 Kan. 463, 168 Pac. 316, referred to above, which makes no mention of action by public authority.

Kring had such special interest in the highway that he could maintain the proceeding to enjoin obstruction.

The judgment of the district court is affirmed.