114

No. 34,067

S. Schulman, *Appellee*, v. The Atchison, Topeka & Santa Fe
Railway Company, *Appellant.*

(86 P. 2d 590)

Opinion filed
January 28, 1939.

*Bruce Hurd, C. J. Putt, Robert M. Clark,* all of Topeka, and *A. M. Fleming,*
of Garden City, for the appellant.

*A. Schulman* and *Ray H. Calihan,* both of Garden City, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was a stock-killing damage suit under the
statute G. S. 1935, 66-295 *et seq.* A jury was waived; most of the
pertinent facts were agreed to; defendant's section foreman supplied
some additional facts by his oral testimony; and the trial court gave
judgment for plaintiff.

Defendant appeals, complaining of the trial court's ruling on its
demurrer, and of the judgment. To determine the merit of these
points, the facts may be summarized thus:

The defendant's railway runs east and west through Finney
county. The right of way is fenced on both sides. Plaintiff's farm
is located at some unstated distance south of the railway. There
was a pasture on that farm enclosed with a fence of the legal stand-
ard of sufficiency. Skirting that pasture on the west was a public
road running north to the railway. Bordering and paralleling the
railway was a road running east on the south side of the railway. A
mile or two east of the intersection of the north-and-south public
road and the east-and-west road was a farm called the Oxley farm,
part of which lay north of the railway and part south of it. For the
convenience of the Oxley farm and its tenant the railway company
constructed a private crossing over its railway track and maintained

two gates, one in its fence bounding the north side of the right of way and the other bounding its south side.

For two or three years past, the tenant on the Oxley farm had been careless about the gates at this private farm crossing. Defendant's section foreman testified that during certain portions of the year, when Wentz, the Oxley tenant, had livestock in that part of the farm lying south of the railway, the south gate at the farm crossing was left open much of the time. His testimony, in part, reads:

"I pass that gate on an average of about once a week. Some weeks I pass two or three times. I know this because under the rules I am required to, and it is my custom to inspect the whole of my section at least once a week. I found this gate, the one south of this private crossing, open practically every time I went by except when Mr. Wentz had stock south of the track. It was our custom to always shut these gates when they were found open unless somebody was close by using them at the time. I closed this gate on an average of once a week for the last two years."

In the agreed statement of facts the following also appears:

"That for three years prior to said 5th day of December, 1936, and up to the time of the accident involved in the petition, said south gate was left open and never closed except for very small periods of time at different intervals, which periods of time in the aggregate covered about one-sixth of the entire three years or about six months in all; that for a period of one year prior to said 5th day of December, 1936, said gate remained opened except for the period of a few days the fall of 1936."

It is defendant's contention that the facts of this case bring it within the rule announced in *Fritzel v. Kansas City, K. V. & W. Rly. Co.*, 118 Kan. 447, 235 Pac. 852. In that case, however, the plaintiff's cow, which defendant's train killed, had first strayed into the premises of a neighbor, Ed Schaake, and found her way into the railway right of way through an open gateway from which Schaake had carried off the gate for his own convenience. In the Fritzel case it was held, quite properly, that plaintiff's cow was a trespasser on Schaake's farm, and when it strayed on to the railway right of way through an open gateway from that farm, its owner was no more entitled to recover from the railway company than Schaake himself would have been if one of his cows had been killed under the same circumstances.

The only basis for comparing the Fritzel case with the present is the assumption that the road which ran east and west on the south side of the railway track was not a public road, but merely a way

of sufferance through the two parts of the Oxley farm. It is true defendant's foreman testified to that effect. His testimony reads:

"The south gate opens into Mr. Wentz' field. As I understand it there is no road there. The road ends about a half a mile west. There is a trail there but no road that I know of."

However, in the agreed facts it was stipulated:

"That a regularly laid out highway parallels the railroad of defendant along the south side of said railroad from a point about two miles east of Garden City to the west line of said section 5; that a road continues on east paralleling the railroad of defendant on the south across said section 5 [situs of Oxley farm], and then on east to about two or two and one-half miles. to about what is known as 'Point of Rocks,' and then the road meanders, finally ending at Pierceville; that said road from said 'Point of Rocks' to Pierceville is traveled very little at the present time and has not been traveled to any extent for the last several years; that said road was graded at the direction of the county engineer of Finney county, Kansas, through said section 5 past said private railroad crossing the year 1934, but has never been graded from there on to Pierceville; that said road has been in continuous use for thirty or forty years last past; that a wire gate has been maintained across said highway almost continuously at a point a short distance east of said 'Point of Rocks'; that a wire gate was closed across said road on the west line of said section 5 by the occupant of said Oxley farm at times when he was pasturing stock on the portion of said section south of said railroad; that said road between the west line of said section 5 and Pierceville has never been regularly laid out by any county or township official, but has been used as hereinbefore stated; between the north edge of said road across said section 5 and the south line of the right of way of the defendant is a strip about twenty feet in width; that prior to 1918 said road was traveled to quite an extent by the public generally between Pierceville and Garden City, but in 1918 a paved highway was constructed between Garden City and Pierceville, and that since the construction of said paved highway the public generally has been traveling it."

Under this stipulation of facts, we think it is clear that the east-and-west road which paralleled the defendant's railway and ran contiguous to it through the Oxley farm was a public road—by prescriptive use, if for no other reason. (*Shanks v. Robertson,* 101 Kan. 463, 465, 168 Pac. 316; *Kring v. West,* 133 Kan. 455, 300 Pac. 1080.)

It must therefore be held that the road from which plaintiff's mules passed through the open gate on to defendant's right of way was a public road; and the rule announced in the Fritzel case does not control this case. As this court has often said, it was the duty of the railway company to fence its right of way, and a gate in that fence is itself a part of the fence (*Roman v. St. Louis-S. F. Rly. Co.,*

120 Kan. 585, 588, 245 Pac. 115). See, also; *Sherman, Adm'r, v. Anderson*, 27 Kan. 333, 335; *A., T. & S. F. Rld. Co. v. Riggs*, 31 Kan. 622, 3 Pac. 305; *Mo. Pac. Rly. Co. v. Baxter*, 45 Kan. 520, 26 Pac. 49. Still more imperative is the duty of a railway company to fence its right of way where it is paralleled by a contiguous public road. (*Mo. Pac. Rly. Co. v. Eckel*, 49 Kan. 794, 31 Pac. 693.) Plaintiff's mules were not trespassers on that east-and-west road; and the fact that the Oxley tenant had long persisted in the habit of leaving defendant's gate open did not relieve defendant of its statutory duty nor of its statutory liability.

In cases where the private crossing gate in a right-of-way fence has been casually left open by some third party and domestic animals stray onto the railway track and are killed, it is generally held that the railway company is not liable; but the rule is otherwise where the gate is left open so long or so frequently that it is chargeable with notice of that fact. (52 C. J. 56-57.) We note the early case of *Henderson v. The C. R. I. & P. R. Co.*, which was three times before the supreme court of Iowa, 39 Ia. 220, 43 Id. 620, and 48 Id. 216, and where it was held that all that could be expected of a railway company was the exercise of ordinary diligence to keep its farm-crossing gates closed. We discern nothing in the present decision at variance with that rule. Indeed, the same rule can be deduced from our own case of *Martin v. Railway Co.*, 92 Kan. 595, 141 Pac. 599, in both its majority and minority opinions.

A careful perusal of the record reveals nothing that would permit the judgment for plaintiff to be disturbed.

We must next notice the plaintiff's cross-appeal because the trial court did not see its way clear to award him an attorney's fee, although it did declare that if such a fee could lawfully be allowed, it should be fixed at $100. We see no difficulty about the matter. Defendant presents no argument against it. The statute authorizes it. (G. S. 1935, 66-298; *Roman v. St. Louis-S. F. Rly. Co.*, supra.)

It follows that the judgment of the district court in favor of plaintiff must be modified by adding thereto the sum of $100 as an attorney's fee, and the cause remanded to the district court with instructions to that effect; and when so modified the judgment will be affirmed. It is so ordered.

HUTCHISON, J., not sitting.