No. 39,951

W. I. Transue and Margie Transue, Administrator of the Estate of Howard W. Transue, Deceased, *Appellants*, v. Ray C. Croffoot and Ellen K. Croffoot, Husband and Wife, as Joint Tenants, and Rodney Martin, *Appellees*.

(294 P. 2d 216)

Opinion filed February 29, 1956.

*Kenneth Clark*, of Hill City, argued the cause, and *W. H. Clark*, and *Marion W. Chipman*, both of Hill City, and *E. H. Hatcher*, of Topeka, were with him on the briefs for the appellants.

*Ray C. Sloan*, of Hoxie, was on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: This was an action to enjoin the closing of a public roadway. The appeal was from an order of the trial court sustaining a demurrer to plaintiffs' evidence adduced in support of the first cause of action set out in their petition and rendering judgment in favor of defendants.

We will refer to the appellants W. I. Transue and Margie Transue as W. I. and Margie; to appellees Ray C. Croffoot and Ellen K. Croffoot as the Croffoots, and to appellee Rodney Martin as Martin.

In the first cause of action the petition, in substance, alleged that W. I. was the record owner of certain land in Sheridan county; on February 11, 1950, he sold the land to Howard W. Transue, now deceased, and this land is now an asset of Howard's estate; Margie is administratrix of Howard's estate and was authorized to join W. I. in this action; the Croffoots were owners of adjoining land to the south and west of the Transue land; Martin was the tenant on the Croffoot land; a public road twenty-five feet wide ran east and west across the north end of Croffoots' land; this road connected the Croffoot land and improvements, as well as other land to the east and south of theirs, with the main traveled or township road which ran north and south; there was no other road by which appellants or the public could gain access to said lands; for over thirty-seven years the road had been unobstructed and open as a roadway of ingress and egress to the use of appellants, their predecessors in title, and to the public, and had been so used exclusively, continuously and under a claim of right adversely to Croffoots and their predecessors in title for the passage of animals, machinery, vehicles, and all other road uses.

The petition further, in substance, alleged that the Croffoots and Martin had threatened and were preparing to obstruct and completely close and destroy said public roadway by plowing and building earthen terraces across it and would do so unless enjoined by the court, all of which would result in great and irreparable damages to Margie and W. I., who had no adequate remedy at law.

The demurrer to this first cause of action was overruled. There was a second cause of action, but the trial court sustained a demurrer thereto and appellants have abandoned it.

Separate answers in the form of general denials were filed by the Croffoots and Martin and after a stipulation of facts which established the claim of title in the Croffoots and in Margie and W. I., the trial court went out to view the road and the land in question.

Findings of fact and conclusions of law were made as follows:

"1. The road or trail in controversy has never been improved or maintained by any public authority.

"2. The only road now open to the plaintiffs' improvements is the road in question.

"3. The road east of plaintiffs' improvements has been completely closed and is farmed by plaintiff W. I. Transue so as to be impossible of discernment.

"4. No color of title of any kind was ever created in the public or any public agency.

"5. All use of the road was with the tacit or implied permission of the owner of the Southwest Quarter of Section 5, Township 9, Range 26.

"6. No claim as a public road was ever made by owners of the land east of plaintiff.

"7. No claim as a public road was ever made to the township officers by any person.

"8. The township trustee since 1930 has never considered the road a public road.

"CONCLUSIONS

"1. To claim a road as a public road some color of title is necessary in Kansas.

"2. Some overt act of dedication by a land owner is necessary.

"3. The granting of permission to use a thoroughfare would never ripen into a public road.

"4. Insufficient evidence of an impending danger of closing the road was introduced to justify the granting of an injunction.

"5. Accordingly, judgment for the defendants. Costs are taxed to the plaintiff."

Motions for a new trial and to set aside findings of facts and conclusions of law were filed and were overruled. This appeal followed. There were seven specifications of error, but we are concerned with only the following ones:

2. The court erred in making all conclusions of law herein. The same are contrary to the law of Kansas, and contrary to the evidence in the cause.

4. The court erred in inspecting the premises and road in dispute herein and using the results of such inspection as evidence in the cause.

5. The court erred in overruling plaintiffs' motion for a new trial and motion to set aside findings of fact and conclusions of law.

7. That the decision is contrary to the evidence and the rulings in the cause.

We are not concerned at this time with any question as to whether there was evidence to support the findings of the trial court. We are concerned only with the trial court's conclusions of law No. 1 and No. 2. The question that confronts us in the face of these two conclusions is that if the trial court is correct, a public road can never be established by prescription or estoppel.

Black's Law Dictionary, 4th ed., page 1346, defines *prescription* under *real property law* as,

"The name given to a mode of acquiring title to incorporeal hereditaments by immemorial or long-continued enjoyment."

This definition is followed by a number of authorities from other jurisdictions, but we are directly interested in our own Kansas cases.

Appellees cite a group of cases covering the question of adverse possession, but these cases are not pertinent here except to show that such possession must be for a term of fifteen years before a

claimant can acquire any title. This is according to G. S. 1949, 60-304, *Fourth*, and does not require an elaborate treatment or citation of authorities.

Appellants cite a number of cases where a city, or some other body politic, was involved. In those instances the public body was referred to as an agent of the public since the rights of the public were really what was involved in the determination of the right to use by prescription or the doctrine of estoppel. Many of these cases are of little help but some of them properly state the applicable rule. Such a case is *Cemetery Association v. Meninger*, 14 Kan. 312, 316, where we find a statement to the effect that no formal acceptance by any particular authority is essential after the dedication by the landowner for public use. The mere use by the public with the landowner's knowledge may be sufficient proof of both the dedication and the acceptance. This doctrine rests upon soundest principles even though it is not followed by some courts. The use must be such as to show that public accommodation requires it to be a highway and it is the landowner's intention to dedicate the way to the public. This well states the rule in Kansas, but we might mention that in *State v. Horn*, 35 Kan. 717, 12 Pac. 148, it was said that prescription or limitation did not apply under the facts in that case where the land was vacant or unoccupied. However, that case can be distinguished from our present case because the land here in question was being farmed and was occupied.

Intent by the landowner, either express or implied, to appropriate land to the public use is a necessary element of prescription. This intent is not a secret one but is that which is expressed in the visible conduct and open acts of the landowner. The public, as well as individuals, has a right to rely thereon. If the open and known acts are such as to induce a fairly and reasonably prudent man to infer an intent to dedicate, and they are so acted upon by the public, the owner cannot later recall the appropriation on the basis of a latent or secret intent. This is based on the principle that a man is presumed to intend the usual and natural consequences of his acts. (*Raymond v. Wichita*, 70 Kan. 523, 532, 533, 79 Pac. 323.)

This rule was again stated in a case involving prescriptive use, but the court there held that a permissive use will never ripen into a prescriptive use. However, the burden to establish permissive use is upon the landowner. (*Meade v. Topeka*, 75 Kan. 61, 64, 88 Pac. 574.)

The Raymond case and the Meade case were cited by the parties and are included here to show that this court has always been mindful of the rule that a public use of a roadway may be by prescription. See, also, *Shanks v. Robertson,* 101 Kan. 463, 168 Pac. 316, where it was further stated that the public use had been with the actual or implied knowledge of the landowner, under claim or color of right, and not merely by permission, and the opinion then set out the manner and time. (p. 465.)

The rule on use by prescription was also followed in *Kring v. West,* 133 Kan. 455, 300 Pac. 1080.

More recent decisions of this court declaring this to be the rule are *City of Kingman v. Wagner,* 168 Kan. 558, 213 P. 2d 979, and *Persinger v. Mitchell,* 174 Kan. 522, 256 P. 2d 866. In the *City of Kingman* case it was said,

"The dedication may be established in any way by which the intent of the dedicator may be shown, even by estoppel on the part of the owner of the land. [Citations.]

"In the instant case there is no contention there was a dedication by specific act. If there was any dedication it was one to be inferred from acts and conduct of the owner that manifested an intention to devote the land to public use as a street. . . ." (p. 562.)

and the Meade case, *supra,* was thereafter discussed.

In the Persinger case we have a pure example of permissive use, which is consistent with and fully explains the doctrine of permissive use referred to in the Meade case.

We conclude in the case at bar that the first two conclusions of law are not accurate statements and the trial court erred thereby. In view of what we have herein said, a new trial should be granted.

Other questions raised by the record need not be discussed in view of our determination of this appeal.

The judgment is reversed and a new trial is ordered.

HARVEY, C. J., not participating.